Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

*Additional Counsel listed on signature page*

Attorneys for Plaintiffs and Counterclaim Defendants

*Dolby Laboratories, Inc.,*
*Dolby Laboratories Licensing Corp.,*
*and Dolby International AB*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DOLBY LABORATORIES, INC., DOLBY LABORATORIES LICENSING CORP., AND DOLBY INTERNATIONAL AB,<br><br>Plaintiffs,<br><br>v.<br><br>INTERDIGITAL, INC. AND INTERDIGITAL MADISON PATENT HOLDINGS, SAS,<br>Defendants. | Case No. 2:26-cv-02269-WLH-BFM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE UNDER FED. R. CIV. P. 12(b)(6) AND 12(f)**<br><br>Judge: Hon. Wesley L. Hsu<br>Courtroom: 9B<br>Hearing Date: September 11, 2026<br>Hearing Time: 1:30 p.m. |
| INTERDIGITAL, INC. AND INTERDIGITAL MADISON PATENT HOLDINGS, SAS,<br><br>Counterclaim Plaintiffs.<br>v.<br><br>DOLBY LABORATORIES, INC., DOLBY LABORATORIES LICENSING CORP., AND DOLBY INTERNATIONAL AB,<br><br>Counterclaim Defendants, | |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The '268 Patent Is Ineligible for Patenting ........ 1

1. *Alice* Step One: the Patent Is Directed to an Abstract Idea ........ 1

a. Claim 6 Is Directed to the Abstract Idea of Converting Picture Content from One Format to Another Format ........ 1

b. Claim 6 Does Not Otherwise Recite a Technological Improvement to a Technical Problem ........ 4

2. *Alice* Step Two: The '268 Patent Does Not Recite an Inventive Concept ........ 7

3. Claim 6 Is Representative of the Challenged Claims; Regardless, They Are All Invalid for the Same Reason ........ 9

B. No Factual Disputes Preclude Dismissal Under Section 101 ........ 10

C. The Court Should Dismiss InterDigital's Second Counterclaim and Strike Its Related Requests for Relief ........ 11

1. InterDigital's Second Counterclaim and Associated Requests for Relief Go Far Beyond What InterDigital Says It Seeks ........ 11

2. The Second Counterclaim Is Unnecessary with Respect to Direct Infringement by Dolby Customers or Damages ........ 12

3. The Court Should Reject InterDigital's Improper Attempts to Narrow Dolby's DJ and Limit Discovery ........ 12

D. InterDigital Concedes Dismissal of Its "Validity" Counterclaim ........ 13

III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020) .......... 2, 6, 7

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371 (Fed. Cir. 2024) .......... 2, 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) .......... 8

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) .......... 8

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .......... 10

*Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025) .......... 2

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) .......... 5, 7

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .......... 9

*directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247 (Fed. Cir. June 25, 2025) .......... 2, 5, 6

*Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) .......... 8

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006) .......... 12

*GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053 (Fed. Cir. 2026) .......... 3, 6, 8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023) .......... 2, 4, 6, 7

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........ 5, 6

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........ 3, 9

*RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*,
No. 2025-1044, 2026 WL 1162746 (Fed. Cir. Apr. 29, 2026) ........ 10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ........ 3

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ........ 5

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) ........ 3, 4, 9

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015) ........ 12

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ........ 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ........ 3

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ........ 5

**Statutes**

35 U.S.C. § 101 ........ 1, 6, 10, 13

**Other Authorities**

Fed. R. Civ. P. 13 ........ 11

## TABLE OF ABBREVIATIONS AND NOTES

| | |
|---|---|
| Dolby Laboratories, Inc., Dolby Laboratories Licensing Corp., and Dolby International AB | Dolby |
| InterDigital Inc., InterDigital VC Holdings, Inc., Interdigital Madison Patent Holdings, SAS, and Interdigital CE Patent Holdings, SAS | InterDigital |
| The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., Bamtech, LLC, Hulu, LLC, and ESPN, Inc. | Disney |
| U.S. Patent 9,185,268 | '268 patent |
| The present case: *Dolby Laboratories, Inc., Dolby Laboratories Licensing Corp., and Dolby International AB v. InterDigital, Inc. and InterDigital Madison Patent Holdings, SAS*, Case No. 2:26-cv-02269-WLH (BFMx) (C.D. Cal.) | DJ Action |
| *Interdigital Inc., Interdigital VC Holdings, Inc., Interdigital Madison Patent Holdings, SAS, and Interdigital CE Patent Holdings, SAS v. The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., Bamtech, LLC, Hulu, LLC, and ESPN, Inc.*, Case No. 2:25-cv-00895-WLH-BFM | Disney Action |

| | |
|---|---|
| *Dolby Laboratories, Inc., Dolby Laboratories Licensing Corp., and Dolby International AB v. InterDigital, Inc. and InterDigital Madison Patent Holdings, SAS*, Case No. 2:26-cv-2270-AB-SP | Omnibus Action |
| Dkt. 1 in DJ Action | DJ Complaint |
| Dkt. 1 in Disney Action | Disney Complaint |

**Notes**: All emphasis added unless otherwise stated.

# I. INTRODUCTION

The Court should dismiss InterDigital's counterclaims for several reasons. First, the asserted patent claims are invalid under Section 101. Indeed, InterDigital's attempted defense of these claims only confirms that they are abstract and conventional. Stripped of its labels, InterDigital describes claim 6 as two versions of the same content—one derived from the other by an unspecified "color gamut mapping." But two "related" masters is a desired result, not a technological solution. The claims say nothing about ***how*** to achieve that result beyond applying preexisting, generic techniques the specification admits were already conventional. As the Federal Circuit has repeatedly held, converting content from one format to another is an abstract idea and insufficient for patent eligibility.

Second, the Court should dismiss InterDigital's second counterclaim because it seeks relief from non-party Disney, Dolby's customer. Dismissal of its second counterclaim does not deprive InterDigital of anything it is entitled to litigate because direct infringement by Dolby's customers remains an element of InterDigital's first counterclaim, and Dolby's claims put customer noninfringement squarely at issue. What the second counterclaim improperly adds—a freestanding claim against, and relief directed to, non-party Disney—should be dismissed and stricken.

Finally, InterDigital admits its third counterclaim (for patent validity) should be dismissed.

# II. ARGUMENT

## A. The '268 Patent Is Ineligible for Patenting

### 1. *Alice* Step One: the Patent Is Directed to an Abstract Idea

#### a. Claim 6 Is Directed to the Abstract Idea of Converting Picture Content from One Format to Another Format

InterDigital's central argument is that claim 6 is patent eligible as an ordered combination specifying (1) a relationship between a first master and a second master, (2) an order for creating the first master and the second master, and (3) that the first

master is for consumer displays and the second master is for professional displays. Dkt. 66 (Opp.) at 4-9. InterDigital does not dispute that the individual elements generically recited in claim 6—including color correction, mastering, non-reference and reference type displays, non-reference and reference gamuts, and color gamut mappings—were well known in the art. *Id.* at 4-5, 11; *see* Dkt. 55 (Mot.) at 8-13.[1] In InterDigital's view, claim 6 is not abstract because it is directed to creating the reference master from the non-reference master by applying a color gamut mapping to the non-reference master. Opp. at 6-8. Not so.

InterDigital's framing of claim 6 ***reinforces*** the conclusion that it recites mere abstract data manipulation, and is focused on converting information (i.e., picture content) from one format (i.e., the non-reference master) to another format (i.e., the reference master)—a concept that the Federal Circuit has consistently and repeatedly deemed abstract. *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023); *directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247, at *4 (Fed. Cir. June 25, 2025); *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020). Although claim 6 recites a relationship between formats and an order for creating the formats (Opp. at 7-8), the same is true for any claim directed to the abstract idea of converting between formats. Format conversion necessarily involves an input format, an output format, and a conversion between the two that creates a relationship. Moreover, a conversion process inherently involves

---

[1] InterDigital suggests (at 11) that the prior art has no bearing on patent eligibility. But the Federal Circuit has "recognized that it may be necessary to analyze conventionality at [*Alice*] step one as well as [*Alice*] step two . . . ." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1369 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025). Here, the prior art cited by the applicant confirms the '268 Patent's own admission that "mastering" was conventional. '268 Patent at 1:15-44, 4:1-36; Mot. at 11.

an order, starting with the input, and ending with the output. That is all InterDigital has argued. None of this is patent eligible.

Apart from the abstract idea of converting between formats, InterDigital at most asserts that claim 6 recites that the starting format is "a master for non-reference (e.g., consumer) displays," the ending format is a "master for the reference (e.g., studio) display[s]," and the conversion is facilitated by a "color gamut mapping." Opp. at 7. Even with these additions, claim 6 remains abstract. As a preliminary matter, the '268 Patent acknowledges that converting content from one gamut to another gamut, e.g., by replacing color primaries, was well known. '268 Patent at 3:1-11. Merely dictating a type of input data for the abstract data manipulation and conversion process, the claimed "non-reference master," does not alter the conclusion that claim 6 is abstract. *See RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

Nor does the recitation of a specific type of output data, i.e., a reference master, make claim 6 non-abstract. *See RecogniCorp*, 855 F.3d at 1327. InterDigital refers to a "specific ordered mastering workflow," but that is simply an abstract, undefined, black-box process for converting a color gamut of the input non-reference master to a color gamut of the reference master (i.e., a color gamut mapping) that likewise fails to confer patent eligibility. *Id.*; *see GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1167-68 (Fed. Cir. 2019). The focus of claim 6 offered by InterDigital is therefore nothing more than the abstract idea of ***converting*** picture content from a first format to a second format—the claim recites nothing about "***how***" the conversion is performed.

InterDigital accuses Dolby of "improperly strip[ping] away the claims' technical context" and "reducing Claim 6's two related masters and required color mapping to generic 'format conversion.'" Opp. at 6, 10 (capitalization corrected); *see*

*also id.* at 9-10 (attempting to rely on statements made by Dolby to the Patent Office in an unrelated Dolby patent application that, unlike here, did involve detailed algorithmic steps). But Dolby's analysis "tracks the claim language and accurately captures what the patent asserts to be the 'focus of the claimed advance over the prior art' . . . ." *Solutran*, 931 F.3d at 1168 (quoting *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). Claim 6 recites (1) "a color gamut mapping," (2) that this "color gamut mapping" is "applied to the [non-reference master]," and (3) that the reference master is "provide[d]" "using [the] color gamut mapping." The specification likewise confirms this color gamut mapping is the focus of the claims, stating it is "essential that a proper way of color gamut mapping is used for rendering colors on the display." '268 Patent at 3:54-55. Rather than over-generalizing claim 6, Dolby identifies the precise advance recited in claim 6 that the '268 Patent inventors purported to make—the abstract idea of converting picture content between formats without claiming ***how*** the conversion is performed.

**b. Claim 6 Does Not Otherwise Recite a Technological Improvement to a Technical Problem**

InterDigital characterizes the technical problem solved by claim 6 as one in which consumer displays, when provided a version of content mastered for a professional display, produce incorrect colors. Opp. at 5-6. Yet InterDigital's assertion that claim 6 solves this problem is unmoored from the actual claim language. *See Hawk Tech.*, 60 F.4th at 1357. The '268 Patent admits that color gamut mapping by replacing color primaries was well known and describes that "it is essential that a ***proper way*** of color gamut mapping is used for rendering colors on the display" '268 Patent at 3:1-11, 3:54-55. But rather than reciting a "proper way" of color gamut mapping or specifying a "***defined*** dependency between the two masters" that InterDigital claims would prevent "color errors that plagued prior systems" (Opp. at 8), claim 6 generically recites a "color gamut mapping" that would encompass any color gamut mapping. That would include the prior art color gamut mapping the

’268 Patent itself acknowledges would fail to solve the color reproduction problem. ’268 Patent at 3:1-11. Even accepting InterDigital’s characterization, “claim [6]’s solution to th[is] problem[] is the abstract idea itself”—converting picture content from one format (i.e., the non-reference master) to another format (i.e., the reference master). *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021); *see Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018); *directPacket*, No. 2024-1147, 2025 WL 1752247, at *4 (finding claims to be abstract when they said little about how functionality was improved and were recited in result-oriented generality).

Nor does the ’268 Patent present a technological solution to the problem of having to “[c]reat[e] a separate master from scratch for every possible consumer display.” Opp. at 5. To conclude otherwise contradicts the specification, which states that “given the variety of available consumer displays, more than one CG2 version may be generated, while maintaining the spirit of the present principles.” ’268 Patent at 7:23-25, 10:1-3, 11:30-32. Thus, the patent does not eliminate the need for creating multiple masters. The patent purports to change only that one master is converted from, and hence related to, another master.

But even if creating related masters were beneficial, the recited workflow that would allegedly yield this benefit does not reflect a ***technological*** improvement. Indeed, InterDigital is incorrect that claim 6 recites specific rules that improve a technological process, analogous to the non-abstract claim in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1311-16 (Fed. Cir. 2016); Opp. at 6-7. The *McRO* Court determined that the claim was “focused on a specific asserted improvement in computer animation” distinct from the conventional process performed by humans that, as the defendants conceded, were “driven by subjective determinations rather than specific, limited mathematical rules.” *McRO*, 837 F.3d at 1313-14. By contrast, InterDigital never articulates ***how*** its alleged improvement is a ***technological*** improvement. Opp. at 6-8. Indeed, in claim 6, the recited displays

perform conventional display functions, and therefore these displays amount to "tools to carry out an abstract idea, using their ordinary functions without specific hardware or process advances in those functions . . . ." *GoTV*, 166 F.4th at 1064.

Claim 6 likewise fails to recite an improvement to any technological process. According to InterDigital, claim 6 "does not claim the manual creative process of 'color correction' to choose aesthetically preferred colors." Opp. at 12. Yet InterDigital admits that color correction, mastering, and color gamut mapping are manual, subjective, non-technological processes that, as the '268 Patent confirms, involve colorist intervention. *Id.* at 5; Dkt. 27 at 13 (InterDigital describing that "mastering" and "generating metadata for a color gamut mapping" depends on subjective decisions by colorists); '268 Patent at 8:11-24, 8:56-62, 10:4-9, 11:33-38. What's more, in InterDigital's view, claim 6 recites "improved ***mastering***," hence confirming that any alleged improvement is a non-technological improvement to a subjective, human-performable abstract process. Opp. at 13.

Nor does claim 6's recitation of "color gamut mapping" constitute a technological improvement. Unlike the "relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually at a particular timing" recited in the *McRO* claims (837 F.3d at 1315), the '268 Patent's claim 6 uses "result-based functional language," reciting a starting point (non-reference master), an end point (reference master), and a black box process (color gamut mapping) linking the two. *GoTV*, 166 F.4th at 1064-65; *directPacket*, No. 2024-1147, 2025 WL 1752247, at *4; *Hawk Tech.*, 60 F.4th at 1357-58. And Dolby does not "import a § 112 requirement into the § 101 analysis." Opp. at 10. Rather, Dolby emphasizes claim 6's failure to recite any algorithm or other technological means to highlight the complete absence of any explanation of how to perform the claimed conversion process.

Further, InterDigital misapprehends the abstract claims at issue in *Adaptive Streaming* and *Hawk Technology*. Opp. at 7-9. In *Adaptive Streaming*, despite the

representative claim reciting specific structural details associated with the formats and specific parameters that would inform the transcoding or conversion from the first format into the multiple output video signals, the Federal Circuit concluded the claims were abstract. 836 F. App'x at 903. Similarly, in *Hawk Technology*, the Federal Circuit determined the claims were abstract for failing to explain "what the claimed parameters are or how they should be manipulated" even though the claims recited using these specific temporal and spatial parameters to convert video surveillance video source images into a progressive video format with a specific frame rate. 60 F.4th at 1353, 1357 (cleaned up).

Claim 6 says even less than the claims in *Adaptive Streaming* and *Hawk Technology*. It describes a one-to-one conversion from an input format (non-reference master) to an output format (reference master) and fails to set forth ***any*** parameters for its black-box color gamut mapping, much less how such parameters would be manipulated to achieve a color gamut mapping that would solve the color reproduction problem.

In sum, claim 6 does not satisfy *Alice* Step One for being directed to abstract idea of data manipulation and format conversion.

### 2. *Alice* Step Two: The '268 Patent Does Not Recite an Inventive Concept

InterDigital alleges the same features it relied on at *Alice* Step One supply the inventive concept at *Alice* Step Two: first creating a non-reference master and then deriving a reference master from the non-reference master. Opp. at 12. But "claim [6] cannot rest on the patent-ineligible concept [i.e., the abstract conversion process,] alone to transform the invention into something significantly more than that concept." *AI Visualize*, 97 F.4th at 1379 (citing *BSG Tech*, 899 F.3d at 1290). The inventive concept cannot simply be "the application of an abstract idea using conventional and well-understood techniques . . . ." *BSG Tech*, 899 F.3d at 1290-91.

InterDigital's repeated invocation of the clear-and-convincing standard does not change the analysis. Opp. at 3, 4, 13, 15. Eligibility is a question of law, and the clear-and-convincing standard governs only genuine factual disputes. InterDigital identifies none, relying only on attorney characterizations of an intrinsic record that speaks for itself. As Dolby's motion identifies—and InterDigital does not dispute—the intrinsic record is replete with evidence that claim 6 simply recites "ordinary [display technologies] to perform their ordinary functions in carrying out an abstract idea . . . ." *GoTV*, 166 F.4th at 1067; *see Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016); Mot. at 14-15.

InterDigital's reliance on *BASCOM* and *Amdocs* is misplaced. Opp. at 13. In *BASCOM*, the patent at issue claimed a technological solution "to filter content on the Internet that overcomes existing problems with other Internet filtering systems." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016). Similarly, in *Amdocs*, the claim "involve[d] limitations that when considered individually and as an ordered combination ***recite an inventive concept through the system's distributed architecture***." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302 (Fed. Cir. 2016).

Claim 6, by contrast, does not recite any improvement to, or any inventive concept stemming from, claim 6's technological elements, much less a computer system (as in *BASCOM*) or a distributed architecture (as in *Amdocs*). Claim 6 does not improve non-reference type displays or reference type displays, which, in the context of claim 6, merely perform conventional display operations. And the "particular arrangement in which the first master guides creation of the second" (Opp. at 13) is the "abstract-idea-based solution implemented with generic technical components in a conventional way," as evidenced by the specification. *BASCOM*, 827 F.3d at 1351; *see* Mot. at 14-15.

**3. Claim 6 Is Representative of the Challenged Claims; Regardless, They Are All Invalid for the Same Reason**

Claim 1 has the same abstract conversion idea as claim 6—a "color gamut mapping." InterDigital identifies only two differences from claim 6: (1) the source content is mastered only for non-reference type displays and (2) metadata is required for the "color gamut mapping." Opp. at 14. Neither matters. Whether a master is created at all, or whether one or two masters are created, has no bearing on whether claim 1 is focused on the abstract idea of format conversion. Mastering is a manual, subjective, and conventional process. *See* Mot. at 12. And claim 1's "metadata" merely facilitates a generic "color gamut mapping" and is therefore analogous to claim 6's "color gamut mapping," and is a result-oriented limitation that does not specify what the metadata contains, how it is generated, or how it is used to reach the desired result. *Id.* at 16-17. An independent analysis of claim 1 thus reaches the same result. *See RecogniCorp,* 855 F.3d at 1327; *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 772 (Fed. Cir. 2019).

The analysis is unchanged for the dependent claims. The '268 Patent describes "color correcting to provide predictable results" and "color gamut mapping"—the focus of independent claim 6—as its purported advance. '268 Patent at 3:54-55, 4:37-40; *see id.* at 6:3-5, 8:36-41, 10:1-12, 11:30-41. Neither InterDigital nor the patent identifies any technological improvement specific to any of the dependent claims, including claims 2-4 and 8-9 identified by InterDigital's opposition (at 14-15) as requiring independent eligibility analyses. *See, e.g.*, *id.* at 1:60-2:28, 7:30-37, 10:18-22.

Nor do the dependent claims add anything that alters the abstract concept. Claim 2 recites the type of metadata and its transmission both in-band and out-of-band. Claims 3 and 4 specify when the abstract conversion is performed. *See Solutran*, 931 F.3d at 1166. Claims 5 and 10 recite generic display technologies that the '268 Patent admits existed in the prior art. '268 Patent at 1:60-2:28. Claim 7

applies the results in a "consumer device" environment. Claim 8 recites "metadata" equally generic to claim 1. Claim 9 recites a desired result of display or simulation of color-corrected content. And claim 11, specifying the reference master is "a derivative of" the non-reference master, merely generically describes claim 6's abstract conversion.

Because these dependent claims "fail to add any meaningful specificity," the specification lacks "any significant accompanying description" of them, and they at most add generic display technologies and their conventional functions, they remain linked to the same ineligible format conversion concept of claim 6. *RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*, No. 2025-1044, 2026 WL 1162746, at *3 (Fed. Cir. Apr. 29, 2026); *see Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023).

Claim 6 is therefore representative of claim 1 and the dependent claims. All are patent ineligible.

### B. No Factual Disputes Preclude Dismissal Under Section 101

InterDigital invokes (at 13, 15) *Berkheimer v. HP Inc.* in attempting to defeat dismissal. 881 F.3d 1360, 1368 (Fed. Cir. 2018). In *Berkheimer*, the patentee pointed to portions of the specification contradicting the district court's findings, and, in view of this intrinsic record evidence, the Federal Circuit determined that a genuine issue of material fact existed as to whether the invention described "conventional activities." *Id.* at 1368-70. Not so here.

InterDigital's specification citations do not undermine any of the '268 Patent's admissions that the technological elements of claim 6 are conventional. Opp. at 15. To the contrary, the first cited passage merely repeats the independent claims. '268 Patent at 4:41-5:4. The next describes color correction processes without any discussion of what was considered well-understood, routine, or conventional. *Id.* at 8:42-9:67. And the last cited passages vaguely gesture at a "real benefit of this approach" but likewise do not comment on whether the steps and technology recited

in the claims are well-understood, conventional, and routine. *Id.* at 10:1-12, 11:30-41.

### C. The Court Should Dismiss InterDigital's Second Counterclaim and Strike Its Related Requests for Relief

#### 1. InterDigital's Second Counterclaim and Associated Requests for Relief Go Far Beyond What InterDigital Says It Seeks

InterDigital admits it "does not seek relief against Disney or seek to add Disney as a party," "is not seeking damages from Disney," and "is not filing a counterclaim 'against' Disney within the meaning of Rule 13." Opp. at 2, 20. It also says its "Second Counterclaim does not rely on the indemnity agreement as a source of liability." *Id.* at 20.

These admissions confirm that the Court should dismiss the Second Counterclaim and strike the associated relief because InterDigital's pleading goes beyond the boundaries it states. Indeed, the Court struck InterDigital's original counterclaims because InterDigital was "missing the counterclaim parties on the caption of the title page." Dkts. 51-52. While InterDigital corrected the title page, its corrected second counterclaim still seeks relief from Disney. The following are examples from InterDigital's Second Counterclaim:

- "InterDigital ***reasserts direct infringement by Disney***." Dkt. 53 ¶88.
- "InterDigital has a ***right to recover against Disney*** as direct infringer." *Id.* ¶90.
- It seeks "[a]n ***injunction preventing Disney*** and Dolby from further acts of infringement and further lawsuits targeting the '268 patent." *Id.* ¶c.
- It seeks "[a]n order requiring Dolby to pay InterDigital's ***damages . . . based on Disney's direct infringement***." *Id.* ¶d.
- It seeks "[a]n order ***requiring Disney to provide an accounting***." *Id.* ¶e.

None of this is consistent with InterDigital's new admissions.

**2. The Second Counterclaim Is Unnecessary with Respect to Direct Infringement by Dolby Customers or Damages**

Dolby agrees that direct infringement is an element of indirect infringement, so InterDigital can address any alleged direct infringement by Dolby customers as part of its ***First*** Counterclaim against Dolby. There will also be no "empty chair" problem. The entire purpose of Dolby's DJ Action is to prove that its customers do not infringe by using Dolby Vision as instructed by Dolby, and Dolby will ask the Court to include that question on the verdict form. Dolby will not limit this case to indirect infringement.

This Second Counterclaim is also not needed for damages. Dolby agrees that any damages awarded against Dolby will exhaust InterDigital's claims against Disney. *See, e.g.*, *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858-62 (Fed. Cir. 2006). Again, this can be litigated as part of the First Counterclaim.

InterDigital suggests it may try to base damages on Disney revenue, but the present motion is not the proper vehicle to address that. Dolby contends that InterDigital's telegraphed approach will violate apportionment rules, but that can be addressed during discovery and *Daubert*. InterDigital's Second Counterclaim cannot be used to expand damages beyond the First Counterclaim.

**3. The Court Should Reject InterDigital's Improper Attempts to Narrow Dolby's DJ and Limit Discovery**

InterDigital reveals that another purpose of its Second Counterclaim is to limit this case to Disney. *See* Opp. at 20 n.3. But a counterclaim cannot limit the scope of Dolby's DJ claim, which is broader and governed by the DJ Complaint. *See* Dkt. 1 at Prayer for Relief, ¶(a). First, InterDigital also cannot limit discovery on Dolby's DJ claim through a footnote in an opposition to a motion to dismiss ***InterDigital's*** counterclaims. *See* Opp. at 20 n.3. Second, adjudicating noninfringement regarding use of Dolby Vision extends to Dolby's entire Dolby Vision customer base—not just Disney. *See, e.g.*, *SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1323-25 (Fed.

Cir. 2015) (non-infringement judgment "settled finally and everywhere" that the accused software does not infringe, and the resulting trade right "attaches to the [supplier] software itself," protecting customers from repeat assertions of the same patent against the same product (quoting *Kessler v. Eldred*, 206 U.S. 285, 289 (1907))).

### D. InterDigital Concedes Dismissal of Its "Validity" Counterclaim

InterDigital does not oppose dismissal of its third counterclaim.

## III. CONCLUSION

The Court should dismiss InterDigital's counterclaims without leave to amend and enter judgment that the asserted claims are invalid under 35 U.S.C. § 101. Alternatively, the Court should dismiss InterDigital's counterclaims two and three without leave to amend for the reasons above.

Dated: August 21, 2026

FISH & RICHARDSON P.C.

*/s/ Madelyn S. McCormick*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640
Fax: (858) 678-5099

John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Alex Yu (SBN 334963)
yu@fr.com
Linda Chang (SBN 363647)

chang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Adam R. Shartzer *(admitted pro hac vice)*
shartzer@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

Peter (Tae) Hong *(admitted pro hac vice)*
hong@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Joshua H. Park (a*dmitted Pro Hac Vice*)
jpark@fr.com
FISH & RICHARDSON P.C.
909 Fannin St., Ste.2100
Houston, TX 77010
Tel: (713) 654-5300
Fax: (713) 652-0109

Attorneys for Plaintiffs
and Counterclaim Defendants
*Dolby Laboratories, Inc.,*
*Dolby Laboratories Licensing Corp.,*
*and Dolby International AB*

**L.R. 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 3998 words, which complies with the word limit of L.R. 11-6.1, and likewise complies with the word limit set by Court Order dated March 26, 2026. *See* Dkt. 21 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (reply not to exceed 4,000 words).

Dated: August 21, 2026

*/s/ Madelyn S. McCormick*
Madelyn S. McCormick