Richard A. Kamprath (admitted *pro hac vice)*
rkamprath@bkbclaw.com
**Budwin Kamprath Burgess Campbell PLLC**
6355 Vanderbilt Ave.
Dallas, TX 75214
Phone: 817.398.5704

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**Olson Stein LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Phone: 310.916.7433

*Additional Counsel in Signature Block
*Attorneys for InterDigital*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION LOS ANGELES**

DOLBY LABORATORIES, INC., *et al.*,

Plaintiffs,

v.

INTERDIGITAL, INC., *et al.*

Defendants.

Case No. 2:26-cv-02269-WLH-BFM
Related Case: 2:25-cv-895-WLH-BFM

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO SEVER AND CONSOLIDATE**

**[REDACTED] VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Hearing Date: November 20, 2026
Hearing Time: 1:30 p.m.
Courtroom: 9B
Judge: Hon. Wesley L. Hsu

AI Certification in Declaration

**NOTICE OF MOTION AND MOTION TO SEVER AND CONSOLIDATE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on November 20, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Central District of California, before the Honorable Wesley L. Hsu, located at 350 W. First Street, Los Angeles, California 90012, in Courtroom 9B, Defendants will and hereby do move under Federal Rule of Civil Procedure 42(a)(2) to consolidate the related cases as to U.S. Patent No. 9,185,268 (the "'268 Patent").

Because the related actions involve significant and inextricably intertwined questions of law and fact, consolidation would promote judicial and party economy by promoting efficiency and avoiding unnecessary cost, duplication, and delay; and consolidation would not unduly prejudice any party or confuse the jury. Apart from this, it would avoid undue prejudice to InterDigital and promote jury understanding of the intertwined direct and indirect infringement issues, and, importantly, would not leave part of the infringement question for a separate proceeding. In keeping with the rationale underpinning the customer suit exception doctrine, the most efficient course of action to achieve these goals would be to lift the stay in Case No. 2:25-cv-00895-WLH-BFM (the "Disney case") as to the '268 Patent only; sever the '268 Patent from the Disney case into its own action; and consolidate that new action into 2:26-cv-02269-WLH-BFM (the "Dolby case") so the question of infringement, both direct and indirect, can be decided in one action.

On October 6, 2026, InterDigital met and conferred with counsel for both Dolby and Disney by videoconference regarding the motion, at which time they thoroughly discussed the substance and potential resolution of the filed motion, as is detailed in the accompanying L.R. 7-3 Declaration. The parties were not able to reach agreement; Dolby and Disney oppose this motion. An identical copy of the motion is being filed contemporaneously in the related case so both Dolby and Disney may be heard.

This motion is based on this notice, the attached memorandum of points and authorities, the records and files in this action and the related Disney action, and any arguments presented at the hearing.

Dated: October 19, 2026

Respectfully submitted,

By: */s/ Richard A. Kamprath*
Richard A. Kamprath (*pro hac vice*)
**Budwin Kamprath Burgess Campbell PLLC**
6355 Vanderbilt Ave.
Dallas, TX 75214
Phone: 817.398.5704
rkamprath@bkbclaw.com

Joshua W. Budwin (*pro hac vice*)
**Budwin Kamprath Burgess Campbell PLLC**
5517 Laceback Terrace
Austin, TX 78738
Phone: 267.251.2874
jbudwin@bkbclaw.com

Kevin Burgess (*pro hac vice*)
**Budwin Kamprath Burgess Campbell PLLC**
508 Oakwood Estates Blvd.
Marshall, TX 75672
Phone: 512.626.7253
kburgess@bkbclaw.com

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**Olson Stein LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Phone: 310.916.7433

*Attorneys for InterDigital*

# TABLE OF CONTENTS


I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II. BACKGROUND OF THE INFRINGEMENT ISSUES PRESENTED ........ 3

III. COMMON QUESTIONS OR LAW OR FACT JUSTIFY THE EFFICIENCIES OF CONSOLIDATION. .................................................. 5

IV. ARGUMENT ........................................................................... 6

A. Consolidation Is The Only Path to Ensuring a Complete, Efficient Resolution of the Liability Issues. ................................................ 6

1. Dolby Is Now Attempting to Distance Itself from Disney......... 6

2. Dolby Acknowledges That Direct Infringement Turns on Disney's Choices, Not Mere Use of DolbyVision "Out-of-The-Box." ................................................................ 8

B. Consolidation Will Avoid Unnecessary Cost, Duplication, and Delay. ................................................................................ 11

V. CONCLUSION ........................................................................ 13

# TABLE OF AUTHORITIES

**Cases**


*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) .......... 7, 8

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) .......... 2, 4, 9

*Flated LLC v. I3 Enters., Inc.*, No. 2:25-cv-04257-WLH-SK, 2026 WL 220905 (C.D. Cal. Jan. 20, 2026) .......... 5, 11

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006) .......... 7, 8

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) .......... 8

*In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) .......... 5

*Invs. Rsch. Co. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 877 F.2d 777 (9th Cir. 1989) .......... 5

*Kahn v. Gen. Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989) .......... 7

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) .......... 7

*Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014) .......... 4, 8

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) .......... 8

*Okta, Inc. v. Biogy, Inc.*, 824 F. Supp. 3d 946 (N.D. Cal. 2026) .......... 10

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027 (N.D. Cal. 2003) .......... 5

*Philips N. Am. LLC v. Garmin Int'l, Inc.*, Case No. 2:19-cv-06301-AB-KS (Nov. 22, 2022) .......... 5

*Samsung Elecs. Co. v. Tech. Consumer Prods., Inc.*, No. 1:23-cv-186, 2024 WL 1961320 (D. Del. May 2, 2024) .......... 8

*Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061 (C.D. Cal. 1999) .......... 5


**Rules**


Fed. R. Civ. P. 21 .......... 5, 13

Fed. R. Civ. P. 42 .......... 5, 11, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Recent developments in this case (and the related Disney case) show why consolidation of the Dolby and Disney infringement claims concerning the asserted method claims of the ’268 Patent is now necessary to promote judicial and party economy, avoid confusion and materially inconsistent (and/or incomplete) outcomes, and achieve an efficient result.

At the October 13, 2026 Scheduling Conference, the Court made clear its intention to adjudicate direct infringement in this case. Its Order on Dolby’s motion to dismiss acknowledges that InterDigital may rely on Disney’s alleged conduct for direct infringement (Dkt. 99 at 20), a reasonable conclusion given that Disney is the only party InterDigital has accused of direct infringement, and the parties spent 18 months developing evidence of Disney’s direct infringement before that case was stayed.

The Court’s case-management rationale appears to rest on the view, drawn from the original Disney complaint (filed in February 2025), that InterDigital accuses DolbyVision of infringing when used “out-of-the-box” per Dolby’s instructions. *See* Dkt. 99 at 2, 21 n.5. Respectfully, that is not InterDigital’s infringement theory. InterDigital’s Final Infringement Contentions—served on May 5, 2026, after extensive discovery from Disney, multiple of its third-party colorists, and Dolby—accuse Disney’s colorists of performing the claimed method through Disney-specific choices. These choices include: which Disney-approved reference and non-reference displays they use, which of the multiple available color gamuts they master to, which non-Dolby grading suites they run, and which Disney best-practice workflows they follow. *See Disney* Dkt. 184-2, Dkt. 185-2 (sealed). InterDigital has not accused Dolby (or its DolbyVision software) of direct infringement of the asserted method claims, nor could it given controlling Federal Circuit law holding that software, by itself, cannot infringe a method claim; only

the party that actually performs the steps of the claimed method—here, Disney—can. *See, e.g., Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221–22 (Fed. Cir. 2014).

The particulars of Disney's use may be a disputed issue in this case. But, under either the Court's view of the infringement question ("out-of-the box") or InterDigital's, there must be a direct infringer before any liability can attach to Dolby as a potential indirect infringer. To prove direct infringement, the direct infringer must be a specific, identified Dolby customer who actually performs the claimed method – not a hypothetical or generic one. And, it is that specific customer who must supply the evidence of how they actually perform color correction—regardless of whether it did, or did not, follow some or all of Dolby's instructions (and the color correction process varies from movie to movie).

Dolby has admitted it does not know the specifics of how Disney (or any of its customers, for that matter) performs color correction, so, without Disney, there will be missing competent evidence on the core issues in the case. Plus, if direct infringement were adjudicated based on a hypothetical user or use of DolbyVision who has not agreed to be bound by the outcome of this case (instead of a specific, identified one, like Disney who has agreed to be bound), such an advisory opinion could not resolve or even narrow the direct infringement question. Thus, a complete analysis of the infringement issues presented in this case necessarily involves evidence of direct infringement that can be presented only by Disney.

Consolidation is the optimal procedure for achieving the goals of efficiency and resolving or narrowing these issues. The Disney and Dolby infringement issues are beyond common; they are inextricably intertwined. And, without Disney, there will be material evidence that may not be available, much less subject to cross-examination to test credibility. Moreover, if the case is presented to a jury, there will likely be significant jury confusion if both sides are presenting evidence of Disney's direct infringement without Disney in the case. Further, a

jury verdict could ultimately find no indirect infringement by Dolby based only on a lack of knowledge or intent—elements unique to indirect infringement—which could leave Disney's direct infringement unadjudicated. Consolidation avoids potential problems like these, which is why InterDigital respectfully asks the Court to order the proposed consolidation to provide the most efficient path to resolution or narrowing of the infringement issues and to avoid the untenable situation that underlies InterDigital's concerns with the current posture of these cases.

## II. BACKGROUND OF THE INFRINGEMENT ISSUES PRESENTED

Asserted claims 1–11 of the '268 Patent are method claims. Unlike apparatus or system claims, which define things structured in a particular way, a method claim consists of *active steps*—here, the steps of the claimed color-correction that must be performed by a colorist separately for each title—and is directly infringed only by one who performs each step. InterDigital has only ever asserted that Disney is the direct infringer. *See, e.g.*, *Disney Action*, Dkt. 178-5 (Preliminary Infringement Contentions, Ex. C); *Disney Action*, Dkt. 184-2 (Final Infringement Contentions (excerpt), Dkt., 185-2 (sealed); Dkt. 53 ¶¶ 85-97.

The Final Infringement Contentions accuse Disney and its internal and third-party colorists of performing the claimed methods through acts they choose and control: mastering to Disney-required P3 or Rec.2020 display settings; selecting from a Disney-approved list of mastering monitors (*e.g.*, [redacted] projectors) and secondary monitors (*e.g.*, [redacted]), each of which can operate as a reference or non-reference type display depending on configuration; grading in non-Dolby suites such as DaVinci Resolve, Filmlight Baselight, and Digital Vision Nucoda; following Disney's own Best Practices Guides, [redacted]; and generating title-specific XML metadata that shows the displays Disney actually used when color correcting each title. *See Disney Action*, Dkt. 185-2, Ex. C at 2 n.2, 4, 8, 13–16, 26–33, 42–47, 59–

64; *see also* Kamprath Decl., Exs. A, B, C (examples of *Disney*—not Dolby—documents cited in InterDigial's Final Infringement contentions showing it is *Disney*—not Dolby—who makes choices about *how* color correction is performed).[1] Dolby agrees that Disney is the only direct infringer InterDigital has ever identified. Dkt. 80-1 at 19–20 (InterDigital "has failed to allege . . . that Dolby indirectly infringes any claim of the '268 patent based on direct infringement by a party other than Disney.").

Dolby's DJ complaint does not allege any claim that Dolby directly infringes. *See* Dkt. 1; Dkt. 53. Dolby's opposition to InterDigital's motion to dismiss relied only on a threat of *indirect* infringement predicated on Disney's direct infringement, Dkt. 33 at 8, and the Court so found. Dkt. 44 at 5. Without Disney's direct infringement, Dolby cannot be liable for induced or contributory infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. 915, 922 (2014) ("where there has been no direct infringement, there can be no inducement of infringement under § 271(b)").

The Court stayed the Disney Action on June 10, 2026. *See generally Disney Action*, Dkt. 213; *see also* Dkt. 241 (Amended Order Re Stay). Disney's stay motion characterized Disney as merely using DolbyVision, called Dolby the "true defendant," and represented that Disney would be bound by the Dolby Action's outcome; Disney's counsel confirmed that representation at the stay hearing. *Disney Action*, Dkt. 177-1 at 7–9; *see also* June 5, 2026 Hr'g Tr. 15:4-9, 15:22-25. Dolby's positions in this litigation, however, undermine the basis for the stay of the Disney case, and, at a minimum, call into question whether the customer-suit exception should even apply. The most straightforward correction for these issues

---

[1] That InterDigital had to obtain permission from Disney to share these documents with Dolby underscores they are Disney documents, not Dolby documents with Disney Bates numbers (which would not have required permission).

given Dolby's contrary positions is to sever the allegations of direct infringement of the '268 Patent by Disney, lift the stay concerning those allegations, and consolidate those allegations into the Dolby case so all of the intertwined infringement issues can be fully adjudicated together here.

## III. COMMON QUESTIONS OR LAW OR FACT JUSTIFY THE EFFICIENCIES OF CONSOLIDATION.

Federal Rule of Civil Procedure 42(a) allows the Court to consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see, e.g., Flated LLC v. I3 Enters., Inc.*, No. 2:25-cv-04257-WLH-SK, 2026 WL 220905, at *2 (C.D. Cal. Jan. 20, 2026) (collecting authorities). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). "The threshold issue ... is whether the actions involve common facts or legal issues." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999). In determining whether to consolidate, "a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003). Actions, however, need not "be identical before they may be consolidated," *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998). Rather, the plain language of Rule 42(a) requires only common questions of law or fact. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, a court may sever one patent from a multi-patent action to promote case management and in the interest of efficiency. *See, e.g.*, *Philips N. Am. LLC v. Garmin Int'l, Inc.*, Case No. 2:19-cv-06301-AB-KS, Dkt. 174 (Nov. 22, 2022), Dkt. 175 (Nov. 30, 2022) (severing patent from other patents on appeal).

## IV. ARGUMENT

### A. Consolidation Is The Only Path to Ensuring a Complete, Efficient Resolution of the Liability Issues.

The question of Disney's direct infringement is foundational to both the Dolby and Disney cases, The parties agree that Disney's direct infringement is a necessary predicate to Dolby's inducement or contributory infringement. Dolby and Disney seeking application of the customer-suit exception doctrine to stay the Disney case assumed that Dolby would step into Disney's shoes for all purposes and litigate *all* infringement questions, and related liability, on Disney's behalf. Since surviving the motion to dismiss, however, Dolby has taken two positions that fundamentally undermine that premise and make the need for consolidation clear.

#### 1. Dolby Is Now Attempting to Distance Itself from Disney.

Far from "stepping into Disney's shoes," Dolby now contends it cannot be liable for Disney's direct infringement. At the outset, Dolby claimed its DJ action should proceed because Dolby is "the real party in interest" and "an infringement claim against [Dolby] the manufacturer is more likely to restore contested property rights" than an action against a customer. Dkt. 33 at 16 (quotations omitted); *see also Disney Action,* Dkt. 213 at 9. Now, Dolby acknowledges that infringement turns on how Disney's colorists perform color correction, including "how Disney performs color correction related to Dolby Vision titles," and whether "the alleged displays used by Disney" are "a reference type display" or "a non-reference type display." This is important because Dolby neither dictates nor knows any of these matters. *See* Kamprath Decl., Ex. D at 16, 20, 27, 34.[2]

---

[2] In view of the Court's Order denying sealing of this entire exhibit, previously filed at Dkt. 82-1 (Dkt. 99 at 22-23), contemporaneous with this filing, the parties are filing a renewed application to seal, seeking sealing of only limited redacted portions of the exhibit pursuant to the Court's guidance.

Dolby has likewise reversed course on the import of the outcome in this case, including as it pertains to remedies. It initially argued to this Court that "InterDigital will be fully compensated and cannot seek damages from Dolby's customers' use of the same products," *and* that "[t]his DJ action will resolve all [of] InterDigital's infringement allegations against *Disney*." Dkt. 31-1 at 17, 20. But Dolby now asserts that "InterDigital *cannot recover damages from Dolby for Disney's conduct*," Dkt. 55 at 18–19 (emphasis added), and that it "will litigate its own damages (if any) *and not the damages of its customers*, *including Disney*." Dkt. 66-3 (emphasis added). Dolby's new position is inconsistent with both its representations to this Court and with Federal Circuit authority. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 859 (Fed. Cir. 2006) (manufacturer liable to make patentee whole for "damages that would be assessed had the patentee sued and obtained a judgment against the customers").[3]

Customer-suit stays presuppose the beneficial efficiency of having the manufacturer case resolve all of the customer's exposure, including damages. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081–82 (Fed. Cir. 1989); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). And, for damages, this flows in part because an indirect infringer is a joint tortfeasor, jointly and severally liable for the resulting damages. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377

[3] In its recent Order, the Court ruled that *Glenayre* does not prevent Dolby from proceeding with this case. Dkt. 99 at 21 n.6. InterDigital's argument concerning *Glenayre* was different; it related to complete damages recovery based on a manufacturer making a patentee whole by covering damages for its customers, not the higher order question of the applicability of the customer suit exception or stays. *See* Dkt. 87-2 at 79 (DDX-1.34) (slide 34 discussing damages principle reflected in *Glenayre*). InterDigital maintains its citation to *Glenayre* for the proposition that Dolby (if the customer-suit exception applies) remains liable for paying damages attributable to Disney's infringement and apologizes for any misunderstanding at the hearing.

U.S. 476, 500 (1964); *Glenayre*, 443 F.3d at 859.

Without Disney, there is a real risk that these efficiencies may not be realized, and core questions may go unresolved. Induced and contributory infringement each requires a predicate act of direct infringement. *Limelight,* 572 U.S. at 921-22; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-22 (Fed. Cir. 2009). Yet, the fact finder could find for Dolby solely on knowledge or intent—elements unique to indirect infringement—leaving Disney's direct infringement undecided, and the parties having to re-do that issue (including some of the same legal and factual issues) later.[4] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *Samsung Elecs. Co. v. Tech. Consumer Prods., Inc.*, No. 1:23-cv-186, 2024 WL 1961320, at *2 n.2 (D. Del. May 2, 2024) (denying customer-suit stay where manufacturer's lack of *mens rea* could leave reseller's direct infringement unresolved). That is precisely the inefficiency the customer-suit doctrine seeks to avoid.

### 2. Dolby Acknowledges That Direct Infringement Turns on Disney's Choices, Not Mere Use of DolbyVision "Out-of-The-Box."

Dolby now acknowledges, in sworn discovery responses, what InterDigital's Final Infringement Contentions have always shown: Disney's direct infringement turns on Disney's choices, not on "pushing a button" on Dolby software "out-of-the-box." Dolby contends it does not dictate material aspects of Disney's process (*e.g.*, color gamut selection, display selection, software customization, and subjective color-correction decisions), and that Disney's alleged infringement: (a)

---

[4] Although the Court stated that if Dolby's instructions lead to direct infringement, this would equate to indirect infringement liability for Dolby (Dkt. 99 at 21 n.5), this omits the required knowledge and specific intent elements for indirect infringement, which must also be proven before liability can attach.

is based on systems produced or implemented by third parties; (b) requires [redacted] by Disney or non-Dolby agents; and (c) is not based [redacted], which neither mandate Disney's workflows nor identify the displays Disney's colorists use. Ex. D at 10–16, 18-19, 21. Dolby does not instruct these steps and says those facts are uniquely within the knowledge of Disney and its colorists. *See id.*

Dolby admits that "none of these Dolby documents describe the displays used by Disney to perform the alleged color correction related to Dolby Vision titles," *id.* at 16, and denies that its source code [redacted] *Id.* at 19. That matters because the claim terms "reference type display" and/or "non-reference type display" *appear* in *every element* of claim 1, and whether a display meets those limitations as the Court construed them depends on the display Disney's colorist actually used to perform the claimed color correction method. *Disney Action*, Dkt. 170 at 16–19. As the Final Infringement Contentions show, Disney—not Dolby—specifies those displays (and their gamuts) through its approved monitor list and mastering-display requirements, and Disney's title-specific XML metadata records the displays used. *Disney Action*, Dkt. 184-2, Ex. 1 at 8, 13–16; *see also* Dkt. 185-2 (sealed).[5]

Dolby further acknowledges that "Disney Mastering generally allows productions the flexibility to grade as desired," Ex. D at 14–15; that [redacted]

---

[5] Unlike the Complaint, which was limited to then-existing public information, the Final Infringement Contentions were developed with significant non-public information developed over 18 months of discovery in the Disney case showing specifically how Disney's colorists perform color correction and why that particularized use infringes the patented methods.

[redacted] that InterDigital alleges "Disney directly infringed by using a third-party system"; and that "merely supporting" "Dolby Vision formats" "does not amount to evidence that Disney has performed or performs a method for color correcting." *Id.* at 11, 13. In short, Dolby agrees that the infringement inquiry requires examining *Disney's* acts that Dolby does not instruct, direct, or control (or even know about), not Dolby's software in isolation—exactly what *Ericsson* requires for a method claim.

Direct-infringement proof is therefore customer-specific. As a court in the Northern District of California recently explained:

> [I]n *Mitek*, to assess whether the accused products potentially infringed, **a factual analysis of the products' customization for an end user was necessary, requiring at least one of the plaintiff's customers to be involved in the case** — the district court and the Federal Circuit determined that the dispute would prove better suited for adjudication if the declaratory judgment plaintiff waited for the patentee to bring an enforcement action against one of the customers.

*Okta, Inc. v. Biogy, Inc.*, 824 F. Supp. 3d 946, 954 (N.D. Cal. 2026) (emphasis added) (citing *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1347 (Fed. Cir. 2025)). Here, the issue is not customization of a product but rather a user's customized implementation of the method.

The Court's Order denying InterDigital's Motion to Dismiss relied on Dolby's allegation that InterDigital's infringement assertions depended on DolbyVision and Dolby documentation for *every* claim element, but noted that, if InterDigital relied on non-Dolby documentation, "the Court's analysis would likely change." Dkt. 44 at 9. Dolby now effectively concedes that InterDigital does *not* rely on only Dolby documents—at a minimum, for the display and gamut

limitations that appear *in every claim element*. These shifts undermine the premise that resolving this case would resolve infringement (or even narrow it) as to *Disney* without further proceedings.

Moreover, introducing Dolby customers other than Disney as potential direct infringers would undermine efficiencies and raise serious issues. For example, there is no jurisdiction—and no basis for waiver or *Kessler* preclusion—as to unnamed customers, particularly where Dolby now acknowledges that direct infringement turns on each customer's own acts, which undoubtedly vary, and are currently unknown to Dolby or InterDigital. Discovery could substantially expand; InterDigital had to serve seven third-party subpoenas on Disney's third-party colorists to gather evidence regarding Disney's implementation of color correction. Dolby has thus far refused to identify how many customers it has, but, even if it were only a few, the discovery required could substantially expand the case. Nor can Dolby speculate that unknown customers merely use its software out-of-the-box and follow its instructions; that needs to be discovered for each customer.

**B. Consolidation Will Avoid Unnecessary Cost, Duplication, and Delay.**

The threshold Rule 42(a) requirement is easily met: both actions involve the same method claims and claim constructions, overlapping technical evidence about how Disney performs the claimed methods, and nearly identical prior art. As this Court held in consolidating a patentee's suit against an accused distributor with its later suit against that distributor's supplier, "[t]he issues of infringement and validity that are central to both actions should be decided once, not twice." *Flated*, 2026 WL 220905, at *2. So too here, where Dolby is Disney's supplier of a software tool. Consolidation eliminates the risk of inconsistent rulings and duplicative discovery and trial, and ensures Disney's direct infringement is not left

to be re-litigated later in the Disney case.[6]

Without Disney, the way this case is currently postured would risk error and due process problems. Dolby admits it does not know how Disney performs the claimed methods, so it cannot present competent evidence on direct infringement—exactly the "empty chair" problem InterDigital raised at the stay hearing. *Disney Action,* June 5, 2026 Hr'g Tr. 9:5-7, 9:20-24; *see also* Dkt. 66 at 19; Dkt. 59 at 10 (reserving right to seek to join Disney "to avoid a due process violation").

The balance of convenience likewise favors consolidation. Disney agreed to be bound by the Dolby case, yet Dolby has argued that relief for Disney's conduct must proceed against Disney. *See* Sept. 25, 2026 Hr'g Tr. 36:12-37:8. Consolidation gives effect to both: Dolby litigates its indirect liability, while Disney-specific liability and damages are resolved in the same proceeding. No other Dolby customer has agreed to be bound by the outcome of this case and Dolby has made plain it will not satisfy any judgment on behalf of its customers.

Finally, consolidation avoids jury confusion—Dolby's own stated concern when the '268 Patent was joined with other patents. *See* Dkt. 33 at 19. One jury could decide the intertwined questions of Disney's direct infringement and Dolby's derivative indirect infringement without an empty chair or an incomplete verdict. And it would be after hearing the best evidence from Disney (subject to real-time cross examination) concerning how it actually performs color correction.

---

[6] Like InterDigital's now-dismissed counterclaim (*see* Dkt. 99), which was intended to keep the issue of direct infringement squarely in the case as defended by Dolby, not to circumvent the stay, this motion does not seek to circumvent the stay, but rather proposes a way to avoid the inefficiencies that would arise by keeping the cases separate in a way that risks punting the core questions and requiring duplicative resources.

## V. CONCLUSION

To achieve the most efficient resolution of the common issues of law and fact in the related cases here, InterDigital respectfully requests that the Court lift the stay in the Disney Action for the sole purpose of resolving the ’268 Patent direct infringement allegations against Disney, sever those allegations pursuant to Rule 21, and consolidate the severed claim into the Dolby case pursuant to Rule 42(a). This case should then proceed to adjudicate direct infringement by Disney, Dolby’s indirect infringement deriving from Disney’s direct infringement, and the damages owed to InterDigital for such infringement.

Dated: October 19, 2026

Respectfully submitted,

By: _/s/ Richard A. Kamprath_

Richard A. Kamprath (*pro hac vice*)
**Budwin Kamprath Burgess Campbell PLLC**
6355 Vanderbilt Ave.
Dallas, TX 75214
Phone: 817.398.5704
rkamprath@bkbclaw.com

Joshua W. Budwin (*pro hac vice*)
**BUDWIN KAMPRATH BURGESS CAMPBELL PLLC**
5517 Laceback Terrace
Austin, TX 78738
Phone: 267.251.2874
jbudwin@bkbclaw.com

Kevin Burgess (*pro hac vice*)
**BUDWIN KAMPRATH BURGESS CAMPBELL PLLC**
508 Oakwood Estates Blvd.
Marshall, TX 75672
Phone: 512.626.7253

kburgess@bkbclaw.com

Nancy M. Olson (SBN 260303)
nolson@olsonstein.com
David M. Stein (SBN 198256)
dstein@olsonstein.com
**Olson Stein LLP**
240 Nice Lane #301
Newport Beach, CA 92663
Phone: 310.916.7433

*Attorneys for InterDigital*

**L.R. 11-6.2 Certification**

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,833 words, which complies with the word limit of L.R. 11-6.1, and likewise complies with the word limit set by Court Order dated March 26, 2026. *See* Dkt. 21 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (motion not to exceed 7,000 words).

Dated: October 19, 2026

*/s/ Richard A. Kamprath*
Richard A. Kamprath