Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

*Additional Counsel listed on signature page*

Attorneys for Plaintiffs and Counterclaim Defendants

*Dolby Laboratories, Inc.,*
*Dolby Laboratories Licensing Corp.,*
*and Dolby International AB*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

DOLBY LABORATORIES, INC., DOLBY LABORATORIES LICENSING CORP., AND DOLBY INTERNATIONAL AB,

Plaintiffs,

v.

INTERDIGITAL, INC. AND INTERDIGITAL MADISON PATENT HOLDINGS, SAS,

Defendants.

INTERDIGITAL, INC. AND INTERDIGITAL MADISON PATENT HOLDINGS, SAS,

Counterclaim Plaintiffs.

v.

DOLBY LABORATORIES, INC., DOLBY LABORATORIES LICENSING CORP., AND DOLBY INTERNATIONAL AB,

Counterclaim Defendants,

Case No. 2:26-cv-02269-WLH-BFM

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND CONSOLIDATE**

**[redacted]REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

District Judge: Wesley L. Hsu

Magistrate Judge: Brianna Fuller Mircheff

Hearing Date: December 11, 2026
Hearing Time: 1:30 p.m.
Courtroom: 9B

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. FACTS DO NOT SUPPORT CONSOLIDATION ........ 3

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. InterDigital provides no basis to undo the Court's existing case structure. ........ 7

B. Nothing has changed since the Court entered its orders. ........ 7

1. InterDigital's Disney-specific infringement argument was already before the Court when it ruled. ........ 8

2. InterDigital's characterization of Dolby's positions does not create a changed circumstance. ........ 8

C. Consolidation is unnecessary because this case will resolve infringement for every customer using Dolby Vision as instructed. ........ 12

1. Dolby's complaint and the Court's rulings confirm this case is broader than Disney. ........ 13

2. Because this case turns on Dolby Vision, the Court can decide it without Disney as a party ........ 15

D. The Rule 42(a) factors favor the Court's existing sequence, not consolidation. ........ 17

V. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Flated LLC v. I3 Enters., Inc.*,
2026 WL 220905 (C.D. Cal. Jan. 20, 2026) ........ 6, 17

*Glenayre Elecs., Inc. v. Jackson*,
443 F.3d 851 (Fed. Cir. 2006) ........ 12, 18

*Huene v. United States*,
743 F.2d 703 (9th Cir. 1984) ........ 6

*Investors Research Co. v. U.S. Dist. Ct.*,
877 F.2d 777 (9th Cir. 1989) ........ 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........ 15

*SpeedTrack, Inc. v. Off. Depot, Inc.*,
791 F.3d 1317 (Fed. Cir. 2015) ........ 15, 18, 19

**Other Authorities**

Fed. R. Civ. P. 42(a) ........ 6, 7, 17

Local Rule 7-18 ........ 6, 7

# TABLE OF ABBREVIATIONS AND NOTES

| | |
|---|---|
| Dolby Laboratories, Inc., Dolby Laboratories Licensing Corp., and Dolby International AB | Dolby |
| InterDigital Inc., InterDigital VC Holdings, Inc., Interdigital Madison Patent Holdings, SAS, and Interdigital CE Patent Holdings, SAS | InterDigital |
| The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., Bamtech, LLC, Hulu, LLC, and ESPN, Inc. | Disney |
| U.S. Patent 9,185,268 | ’268 patent |
| The present case: *Dolby Laboratories, Inc., Dolby Laboratories Licensing Corp., and Dolby International AB v. InterDigital, Inc. and InterDigital Madison Patent Holdings, SAS*, Case No. 2:26-cv-02269-WLH (BFMx) (C.D. Cal.) | DJ Action |
| *Interdigital Inc., Interdigital VC Holdings, Inc., Interdigital Madison Patent Holdings, SAS, and Interdigital CE Patent Holdings, SAS v. The Walt Disney Company, Disney Media and Entertainment Distribution LLC, Disney DTC LLC, Disney Streaming Services LLC, Disney Entertainment & Sports LLC, Disney Platform Distribution, Inc., Bamtech, LLC, Hulu, LLC, and ESPN, Inc.*, Case No. 2:25-cv-00895-WLH-BFM | Disney Action |

**Notes**: All emphasis added unless otherwise stated.

## I. INTRODUCTION

This is InterDigital's fourth attempt to make this case about Disney, and the Court should reject it as it has before. The Court denied InterDigital's motion to dismiss Dolby's declaratory-judgment claims, stayed the Disney Action over InterDigital's opposition, and dismissed InterDigital's counterclaim against Disney as "an effort to circumvent the stay." (ECF 44; Disney Action, ECF 241; ECF 99 at 20.) InterDigital now relabels the same request "consolidation." In substance, it is a disguised motion for reconsideration that fails under either standard.

InterDigital has had every opportunity to show why Disney-specific facts control infringement. It had 18 months of discovery in the Disney Action, served seven subpoenas on Disney's colorists, and served Final Infringement Contentions when that case was "months away from trial." (Mot. at 1, 11; ECF 107-1 ¶ 2; Disney Action, ECF 241 at 11-12.) Yet InterDigital has identified no Disney "specialized implementation" of Dolby Vision outside the accused workflow. (*See* ECF 99 at 21 n.5.) And when the Court asked InterDigital to describe an infringing monitor scenario, a non-infringing one, and "what's different about the monitors in those two hypotheticals," it failed to answer that question. (Ex. 3 at 18.) Adding Disney would not fill that gap.

Nothing has changed to warrant reconsideration of the Court's previous orders. InterDigital tries to manufacture a change by taking Dolby's non-infringement contentions out of context and recasting statements about gaps in InterDigital's own proof as "admissions" about Disney, Dolby's knowledge, and the scope of this case. But it is InterDigital's burden to prove infringement, and Dolby is entitled to explain why InterDigital has not carried that burden. Read in context, Dolby's statements change nothing the Court relied on in allowing this case to proceed while the Disney Action waits. There is no basis for consolidation.

InterDigital has made no secret of why it wants this case to be about Disney. It is pressing a worldwide campaign to force Disney into a patent portfolio license,

recently calling Disney an "unwilling licensee" and announcing that "it is clearly time for Disney to sign an agreement." (Ex. 1.) But InterDigital's campaign against Disney caught Dolby Vision squarely in its crosshairs. After InterDigital obtained a German injunction on the European counterpart of the '268 patent, Disney stopped offering Dolby Vision in Germany. (ECF 44 at 3.) InterDigital now again seeks to bring Disney-specific liability and damages into this case. But the Court already rejected that effort, holding that InterDigital "may not seek relief from Disney in this action" and dismissing Counterclaim II as "an effort to circumvent the stay." (ECF 99 at 20.) Consolidation cannot provide another route to the same relief.

InterDigital's '268 patent infringement theory has targeted Dolby Vision from the beginning. Its original claim chart mapped ***every claim element*** of the '268 patent against Dolby Vision. (ECF 1-2.) Its Final Infringement Contentions added citations to Disney materials, but continue to rely on the Dolby Vision workflow throughout. Adding citations to Disney's documents did not transform the accused Dolby Vision workflow into a Disney-specific implementation. Whether this action frustrates InterDigital's effort to use Dolby Vision as leverage to obtain a Disney license does not change the question before this Court: does the accused Dolby Vision workflow infringe the '268 patent when used as Dolby provides it?

InterDigital's motives aside, consolidation would make the case less efficient. The Court explained this point in its orders on motions to dismiss, its Stay Order, and at three hearings. Deciding first whether the accused Dolby Vision workflow infringes when used out of the box resolves the '268 patent infringement question common to Disney and every other customer using that workflow. Any genuinely customer-specific "specialized implementation" of Dolby Vision, by Disney or anyone else, can be pursued afterward. (ECF 99 at 21 n.5.) ***InterDigital has identified none***. And even if it did, trying a distinct, customer-specific theory alongside the Dolby Vision question would add issues and confuse the jury, not advance resolution of the dispute.

The Court has already rejected InterDigital's efforts to turn this Dolby Vision case into a case about Disney. This motion should be denied.

## II. FACTS DO NOT SUPPORT CONSOLIDATION

The Court has repeatedly held that this case decides whether Dolby Vision infringes for every customer that uses it as Dolby supplies it, not just Disney. In denying InterDigital's motion to dismiss, the Court found a controversy over Dolby's liability "based on the alleged acts of direct infringement by its customers." (ECF 44 at 10.) It noted that InterDigital's Disney claim chart "expressly and repeatedly cites only Dolby documentation." (*Id.* at 6.) At the September 25 hearing, the Court rejected InterDigital's attempt to limit Dolby's relief to Disney: "Just because you haven't alleged [infringement by anybody other than Disney] doesn't mean that they can't get dec relief from it." (Ex. 2 at 45.) The Court then held that InterDigital may recover for use of Dolby Vision "as instructed (i.e., out-the-box use) by Disney or other customers," leaving only a "specialized implementation" for the Disney Action. (ECF 99 at 20-21 & n.5.) And on October 13, the Court described this case as one about "whether Dolby Vision, in and of itself, violates the '268 patent" (Ex. 3 at 15)—aligning with how Dolby has framed this case from its start. (ECF 1 at ¶¶ 21, 23-24.)

InterDigital's Disney contentions were already before the Court when it ruled. It is notable, as the Court found, that these contentions expressly and repeatedly cite Dolby documentation. (ECF 44 at 6.) By InterDigital's own admission, then, it was a Dolby case. And that makes sense because at the time InterDigital was not facing a declaratory judgment claim from Dolby. After Dolby filed this action, however, InterDigital began a campaign to derail it. InterDigital filed a motion to dismiss, and it supplemented its infringement contentions with Disney materials, serving Final Infringement Contentions in the Disney Action in May 2026. This was before the Court stayed that case and before it dismissed InterDigital's Counterclaim II. InterDigital was attempting to shift focus away from Dolby and onto Disney. But

despite this, the Court denied InterDigital's motion to dismiss and stayed the case against Disney.

InterDigital is now trying to capitalize on a different document to try to derail this case—Dolby's noninfringement contentions. It contends that Dolby's contentions demonstrate that this is a Disney case, portraying its "infringement theory" as accusing "Disney's colorists of performing the claimed method through Disney-specific choices." (Mot. at 1.) Yet when InterDigital filed its case against Disney claiming to have good faith basis to assert the '268 patent, it was a Dolby Vision case.

InterDigital's final contentions do not convert this into a Disney case. Those contentions rely throughout on Dolby's *Dolby Vision Color Grading Best Practices Guide* and Dolby's source code to describe the accused method. (*See, e.g.*, Disney Action, 185-2 at 16-20, 47-48, 57-58, 75-77.) Even the Disney guides InterDigital cites as proof of Disney's own choices build on Dolby's guides, which are cited as references in those Disney documents. (*See, e.g.*, ECF 107-2 at 34; ECF 107-3 at 19; ECF 107-4 at 2.) Specifically, the Disney guides reference "Dolby Vision Best Practices / Content Creation Help Center" and "Dolby Professional Support." (ECF 107-2 at 34 and 107-3 at 24.) The third Disney document InterDigital attached to its motion contains "approved monitors" that appear in "Dolby Vision Best Practices." (ECF 107-3 at 2.) In short, these documents do not show that Disney-specific choices dictate the process. Moreover, InterDigital never served a separate set of contentions directed at Dolby. Instead, it simply duplicated those same Disney final contentions for Dolby and asked Dolby, in its Interrogatory No. 2, to explain why Dolby contends that Dolby or the use of Dolby Vision does not infringe infringement. (ECF 80-1 at 12-19.) InterDigital cannot shift its burden of proving infringement to Dolby by demanding that Dolby rebut a Disney theory, and then call Dolby's answer a changed circumstance.

Dolby's response separately addresses the claimed display type and gamut limitations, among other non-infringement defenses. Dolby explains that "[m]erely

showing a display's configuration . . . is not sufficient to show that the display is a 'reference type' or a 'non-reference type'" because the claimed display type is a separate requirement from the gamut for which a display is configured. (ECF 109-2 at 17.) Dolby also explains that InterDigital "improperly and implicitly reads out the requirement that a display be a 'non-reference type,' which is a separate limitation from 'a non-reference color gamut.'" (*Id.* at 21; *see id.* at 28.) Separately, Dolby shows that InterDigital's contentions "do not assert that any of the displays 'output in' a color gamut other than a standardized color gamut." (*Id.* at 22, 29.) Each of these responses turns on what the claims and what InterDigital's own contentions fail to show, not on facts unique to Disney.

Dolby's non-infringement response also holds InterDigital to the theory and evidence of its own contentions. To the extent InterDigital's theory depends on the actual displays Disney used, Dolby points out that the Dolby documents InterDigital cites do not "describe the displays used by Disney to perform the alleged color correction related to Dolby Vision titles," and that InterDigital has not "identified the monitor actually used for any accused title." (ECF 109-2 at 16, 18; *see id.* at 20, 27, 41.) Dolby separately explains that InterDigital has not shown "whether each display is a reference type display or a non-reference type display" under the claims. (*Id.* at 17.) InterDigital's motion recasts these distinct criticisms of its proof as admissions that Dolby does not know how Disney performs color correction or which displays Disney uses. (Mot. at 8-11.) They are not. In context, every one of them identifies a gap in InterDigital's infringement theory and proof InterDigital chose not to advance.

Nothing has changed since the Court's rulings. The Disney Action has been stayed since June 2026, and nothing substantively related to the '268 patent claims or allegations has happened in the Disney Action since then. Disney has instead participated in discovery here as a third party, as the Court directed. (Ex. 3 at 5.) Disney has re-produced its documents in response to the parties' subpoenas, and the

parties reported on production of Disney's documents on October 27. (ECF 107-1 ¶ 6; ECF 115.)

## III. LEGAL STANDARD

Because InterDigital's motion asks the Court to undo its prior orders, Local Rule 7-18 governs. A motion for reconsideration "may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." L.R. 7-18. The rule also bars any motion that would "in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id.* InterDigital never mentions this rule, and its motion repeats the arguments the rule forbids.

Dolby does not dispute InterDigital's statement of the Rule 42(a) standard; the motion fails under it. Rule 42(a) permits consolidation of actions that "involve a common question of law or fact," and the Court has "broad discretion" to decide whether to do so. *Flated LLC v. I3 Enters., Inc.*, 2026 WL 220905, at *2 (C.D. Cal. Jan. 20, 2026) (quoting Fed. R. Civ. P. 42(a); *Investors Research Co. v. U.S. Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989)). In exercising its discretion, the Court balances "the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Id.* (quoting *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)). It also "weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Id.* (quoting *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003)). The Court has already exercised its discretion in how these cases should be organized, and there is no basis for undoing that now.

## IV. ARGUMENT

### A. InterDigital provides no basis to undo the Court's existing case structure.

The Court has already decided how these two cases should proceed: the '268 patent claims targeting Dolby Vision will be litigated here while the Disney Action remains stayed. InterDigital now seeks the opposite result. Although styled as a Rule 42(a)(2) motion, InterDigital cannot obtain consolidation without first lifting the Disney stay and severing the '268 patent claim from that action. (Mot. at Notice 1-2.) Yet InterDigital identifies no basis to lift the stay that the Court entered under the customer-suit exception. And because those steps would require the Court to revisit the structure it already ordered, Dolby expressly raised reconsideration during the parties' conferral for this motion. (ECF 107-1 ¶ 14.) Nevertheless, InterDigital does not mention, much less satisfy, Local Rule 7-18.

The reasons for the stay remain unchanged. The Court stayed the Disney Action after finding "no question that the Dolby Action will result in a significant narrowing of the issues," and selected "the path of judicial economy and efficiency" in staying the Disney Action. (Disney Action, ECF 241 at 8-9.) The overlap InterDigital now invokes as a reason for consolidation is thus the same overlap the Court addressed by staying Disney and allowing the broader Dolby Vision case to proceed first. The Court later dismissed InterDigital's Counterclaim II as "an effort to circumvent the stay," holding that InterDigital "may not seek relief from Disney in this action" and that "any claim for relief from Disney must proceed in the Disney Action." (ECF 99 at 20.) InterDigital itself compares this motion to its "now-dismissed counterclaim." (Mot. at 12 n.6.) Its own comparison confirms that its motion seeks another route to the result the Court already rejected.

### B. Nothing has changed since the Court entered its orders.

InterDigital cites no development that gives the Court reason to revisit how it will resolve the '268 patent claims targeting Dolby Vision. The Court considered

InterDigital's colorist-choices theory twice, first on the stay and again on the motion to dismiss. It ruled against InterDigital both times with that theory before it. Nothing about that theory warrants a different result now.

**1. InterDigital's Disney-specific infringement argument was already before the Court when it ruled.**

The Court stayed the Disney Action after considering InterDigital's argument that Disney's own choices drive infringement. InterDigital relied on its Final Infringement Contentions to argue that Disney infringes "by its own actions rather than as a passive user of Dolby technology," and the Court rightly stayed the case anyway. (Disney Action, ECF 241 at 8; Mot. at 1.)

The Court then dismissed InterDigital's Disney-specific counterclaim with the same theory before it. In opposing dismissal, InterDigital submitted a chart titled "User (Disney) Determines Direct Infringement." (ECF 66-4 at 2.) The chart sorts the "User Choices" of display gamut, source footage, and whether to "Perform Color Grading" into workflows that allegedly infringe and workflows that do not. (*Id.*) With that theory before it, the Court dismissed Counterclaim II, holding that "any claim for relief from Disney must proceed in the Disney Action." (ECF 99 at 20.) InterDigital's motion here presents the same theory a third time. (Mot. at 1-2, 4, 8-10.)

InterDigital's reliance on *Ericsson* (at 2) presents the same theory as a rule of law. InterDigital argues that because the '268 patent claims are method claims, Dolby Vision software cannot infringe on its own. But Dolby and the Court have already framed the question as whether use of Dolby Vision "in and of itself" infringes. (Ex. 3 at 14-15.) This DJ Action will decide that question by determining whether a customer infringes that uses Dolby Vision as Dolby provides it and instructs its use.

**2. InterDigital's characterization of Dolby's positions does not create a changed circumstance.**

InterDigital's primary claim of a changed circumstance rests on taking Dolby's non-infringement contentions out of context. InterDigital says Dolby has now

admitted that it does not know how Disney performs color correction, which displays Disney uses, or how Disney configures those displays. (Mot. at 6, 8-9.) But Dolby made no such admission. The statements InterDigital quotes are from Dolby's non-infringement contentions. They address the evidence InterDigital chose to cite in its final infringement contentions and whether that evidence satisfies InterDigital's infringement theory. They do not concede that Disney-specific conduct controls infringement. To the contrary, they put InterDigital to its burden of proof and call out gaps in the evidence it has cited—that is not an admission.

The passages InterDigital quotes make that clear when read in context. InterDigital bears the burden to prove direct infringement under whatever theory it chooses to advance. If InterDigital's theory turns on the particular displays Disney's colorists used, then it must prove the Disney-specific facts on which that theory depends. But if InterDigital instead relies on Dolby's instructions and workflow, it must show how that evidence satisfies each claim limitation, including the separate requirements for display type and gamut. Dolby's response explains InterDigital's contentions do neither: the Dolby documents InterDigital cites do not "describe the displays used by Disney to perform the alleged color correction related to Dolby Vision titles"; InterDigital has not "identified the monitor actually used for any accused title"; and it has not shown "whether each display is a reference type display or a non-reference type display." (ECF 109-2 at 16-18; *see also id.* at 20, 27, 41.) Those are deficiencies in InterDigital's proof, not admissions that Disney-specific conduct controls infringement.

More fundamentally, Dolby disputes InterDigital's premise that identifying Disney's particular monitor used to perform color correction answers infringement. (*See* Mot. at 9 ("whether a display meets those limitations ["reference type display" and "non-reference type display"] as the Court construed them depends on the display Disney's colorist actually used to perform the claimed color correction method"). The Court's Markman Order construed the "color gamut" portion of the terms, not

"reference type display" and "non-reference type display."[1] Yet beyond identifying the gamut for which a display is configured, InterDigital has not asserted what makes a display a "reference type" display, or a "non-reference type" display. InterDigital bears the burden to prove that the accused method satisfies every claim limitation, including these separate display type limitations, and Dolby's contentions simply hold InterDigital to that burden. ECF 109-2 at 17, 21. Dolby also contends that InterDigital "improperly and implicitly reads out the requirement that a display be a 'non-reference type'" (*id.* at 21; *see id.* at 28), while pointing out that InterDigital's contentions do not assert that any display outputs in anything other than a standardized color gamut (*id.* at 22, 29). Those are two deficiencies in InterDigital's infringement theory, neither of which makes a colorist's particular monitor the answer.

InterDigital's current argument (at 9) that the colorist's *actual* choice of monitor is necessary to prove infringement conflicts with earlier positions. For example, in its Final Infringement Contentions, InterDigital contends: "Displays can be reference type displays by outputting in Rec.709. Displays can be non-reference type displays by outputting in a non-Rec.709 gamut." (Disney Action, ECF 185-2 at 13.) Thus, it appears InterDigital proposes that displays can be either type. (*Id.* at 20-21 ("This display can operate as a reference type display or as a non-reference type display based on the display configuration.")) In its recently served Supplemental Interrogatory responses, InterDigital makes a similar argument: "Dolby's contention that a professional mastering monitor cannot be a non-reference type display is also incorrect." (Ex. 4 at 10-11.) Yet here, when InterDigital is trying to drag Disney into the case, the specific monitors matter.

[1] The Court construed "[a] reference type display[] having [a] reference color gamut" as "a reference type display having a standardized color gamut," Disney Action, ECF 170 at 16-17, and "[a] non-reference type display[] having [a] non-reference color gamut" as "a non-reference type display that does not have a standardized color gamut," *Id*. at 17-18.

InterDigital is also wrong that Dolby's non-infringement contentions trigger the condition the Court identified in denying InterDigital's motion to dismiss. (Mot. at 9-10.) The Court observed that its analysis could change if InterDigital relied on "third-party documentation for several claim limitations in its Disney Action claim charts." (ECF 44 at 9.) But the Disney documents InterDigital now invokes are not new: they were part of InterDigital's Final Infringement Contentions before the Court stayed the Disney Action and dismissed Counterclaim II. And as stated above, those Disney produced documents themselves rely on and implement Dolby's own Dolby Vision workflow guidance. (*See, e.g.*, ECF 107-2 at 34 (referencing Dolby best practices and support documents); ECF 107-3 at 19 ("Dolby provides colorist, operator, and facility best practices training and documentation as part of their usage program"); ECF 107-4 at 2 (noting "Approved Monitor List . . . appears in the HDR Best Practices, Dolby Vision Best Practices and Monitor Calibration Kit").) Dolby's response to those same contentions changes none of the facts on which the Court already ruled.

InterDigital tries to manufacture a reversal in Dolby's position by conflating damages for the accused Dolby Vision workflow with damages for customer-specific conduct going beyond the Dolby Vision workflow. InterDigital contrasts Dolby's earlier statement that this action will resolve InterDigital's infringement allegations against Disney with Dolby's later statements that "InterDigital cannot recover damages from Dolby for Disney's conduct" and that Dolby "will litigate its own damages . . . and not the damages of its customers." (Mot. at 6-7 (quoting ECF 55 at 18-19; ECF 66-3).) Those positions are consistent. Dolby's earlier remark was about its customers' "use of the same products," meaning Dolby Vision. It said nothing about actions beyond that use. If customers infringe by using Dolby Vision as instructed, Dolby can be liable here for damages attributable to that infringing use based on Dolby's revenue, apportioned for the alleged value of the patent and other *Georgia-Pacific* factors; InterDigital does not get a second recovery based on the

separate benefits a customer derives from that same use, such as Disney's revenues from content created using the as-instructed Dolby Vision workflow. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 871 (Fed. Cir. 2006) (holding patentee "fully compensated" for infringement encompassing customers' use of manufacturer's products and rejecting additional damages "based on the benefits [the manufacturer's] customers enjoyed by use of products sold by [the manufacturer]"). What Dolby will not litigate here are damages arising from some customer-specific "specialized implementation" outside the accused Dolby Vision workflow. That is the same distinction the Court already adopted. (ECF 99 at 20–21 & n.5.)

In other words, Dolby's position is not that customer use of Dolby Vision disappears from InterDigital's damages case. That use is part of InterDigital's infringement theory from which it may recover from Dolby based on Dolby's sales. What is not part of InterDigital's damages case against Dolby is a separate recovery based on Disney's own downstream economic activity or conduct unique to Disney or any other customer.

That same distinction explains why Disney need not be added here: this case resolves the accused Dolby Vision workflow, while any genuinely customer-specific specialized implementation remains for a later customer-specific action, if any.

### C. Consolidation is unnecessary because this case will resolve infringement for every customer using Dolby Vision as instructed.

This case is about the common infringement question of whether customers infringe by using Dolby Vision as Dolby provides it. Disney is but one of those customers. Resolving that question here determines the infringement issue common to Disney and every other customer using the same Dolby Vision workflow, without requiring customer-by-customer discovery. Any materially different use can be addressed separately as a "specialized implementation," just as the Court has already provided for Disney. (ECF 99 at 21 n.5.) Adding Disney here does not advance the question this case needs to decide.

**1. Dolby's complaint and the Court's rulings confirm this case is broader than Disney.**

The Court will decide direct infringement here as to use of Dolby Vision as Dolby provides it. InterDigital opens its motion (at 1) by asserting that the Court "made clear its intention to adjudicate direct infringement in this case." That is true, and InterDigital's counsel confirmed that understanding. (Ex. 3 at 11.) The Court then defined that question: whether Dolby Vision infringes when "any customer" uses it off the shelf, "in and of itself." (*Id.* at 14-15.) The direct infringement this case decides is unmodified use of Dolby Vision by Disney and the other customers.

Dolby's complaint asks the Court to resolve the infringement question common to customers using Dolby Vision as provided by Dolby. InterDigital's U.S.-based and global accusations targeting Dolby and Dolby Vision forced Dolby to seek a declaration "that Dolby, Dolby Vision, and use of Dolby Vision, including by Dolby's customers, has not infringed (directly, indirectly, and under the doctrine of equivalents) and does not infringe (directly, indirectly, and under the doctrine of equivalents) the '268 Patent." (ECF 1, Complaint, Prayer for Relief at (a).) Resolving that common infringement question does not require litigating every customer's particular monitor use unless InterDigital identifies a materially different customer-specific implementation that changes the infringement analysis, and even then InterDigital's specific contentions would need to be analyzed to see if they invoke a specialized implementation. InterDigital's motion once again seeks to turn a case about Dolby Vision into a case about one customer.

In alignment with Dolby's complaint, the Court's rulings properly rest on whether Dolby Vision infringes when used as instructed, not on any one customer's use. If InterDigital prevails, it can recover for use of Dolby Vision "as instructed (i.e., out-the-box use) by Disney or other customers." (ECF 99 at 20-21.) InterDigital acknowledges this. And the Court has described the question to be answered here as whether Dolby Vision "in and of itself" infringes when "any customer" uses it

unmodified. (Ex. 3 at 14-15.) With its motion, InterDigital continues to resist the scope of Dolby's action that the Court did not dismiss.

The identity of the direct infringer does not matter because this case concerns use of Dolby Vision as instructed. InterDigital's purported "Disney-specific choices" (at 1) come from a short, fixed list: whether to color grade, whether a display has a reference or non-reference gamut, and whether to use the "SDR Master as Footage." (*See, e.g.*, ECF 66-4 at 2.) Every Dolby Vision user makes those same choices within the Dolby Vision workflow. InterDigital has never explained how any of those choices depart from the Dolby Vision workflow. A judgment on whether those choices satisfy the claimed method resolves the common infringement issues for Disney and every other customer using Dolby Vision as instructed.

InterDigital also misreads Dolby's interrogatory response as limiting this case to Disney. (Mot. at 4.) Dolby said only that InterDigital "has failed to allege" indirect infringement based on direct infringement by anyone other than Disney, and explained that it would not provide noninfringement contentions for those "unasserted infringement allegations." (ECF 80-1 at 19-20.) That describes the scope of InterDigital's public allegations against Dolby customers, not Dolby's declaratory-judgment claim. Indeed, InterDigital's interrogatory itself demanded Dolby's position on "the use of Dolby Vision by Your customers (including Disney)" and, as Dolby pointed out, extended to "every use of Dolby Vision by every customer." (*Id.* at 18-19.) Dolby has now learned, through InterDigital's recent supplemental interrogatory responses dated October 30, 2026, that InterDigital has [redacted].

InterDigital's objection to unnamed customers also fails because the element of direct infringement for an indirect infringement allegation does not require customer-by-customer proof. Direct infringement of a method claim may be proven with circumstantial evidence, including through evidence that customers use the accused product as instructed. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317-19 (Fed. Cir. 2009) (affirming direct infringement based on circumstantial evidence of product sales and instructions despite "little, if any, direct evidence of infringement"). Nor must every customer be a party in this case to resolve the common infringement issues. A judgment resolving whether use of Dolby Vision as instructed practices the claimed method will resolve those same issues for later proceedings through ordinary principles of issue preclusion. The *Kessler* doctrine provides additional protection against repeated assertions involving the same adjudicated product. *See SpeedTrack, Inc. v. Off. Depot, Inc.*, 791 F.3d 1317, 1327 (Fed. Cir. 2015) (explaining that the *Kessler* right "attaches to the [supplier] software itself")). Any materially different customer use would instead be the "specialized implementation" the Court has already left for a later customer specific proceeding. (ECF 99 at 21 n.5.)

**2. Because this case turns on Dolby Vision, the Court can decide it without Disney as a party.**

InterDigital faces no "empty chair" problem (at 12) because Disney need not be a party for InterDigital to present its direct infringement evidence. Disney has reproduced documents here in response to the parties' subpoenas and is participating in discovery as a third party. (*See* ECF 115, Joint Report re Disney Discovery.) InterDigital therefore has access to the Disney evidence on which it bases its direct-infringement theory without consolidating the Disney Action.

InterDigital's insistence that the particular monitors Disney used "matters" (at 9) is inconsistent with its own infringement theory. InterDigital argues that Dolby cannot know whether Disney directly infringes without knowing the particular

displays its colorists used and how they were configured. (*Id.*) Yet, as stated above, InterDigital elsewhere maintains that the same display can operate as either a reference-type or non-reference-type display depending on its use or configuration. (*Id.* at 1; *see also* Disney Action, ECF 185-2 at 21-25 ("This display can operate as a reference type display or as a non-reference type display based on the display configuration."); Ex. 4 at 10-11.) Thus, on InterDigital's own infringement theory, to the extent there is any consistency in the positions, identifying the particular monitor a colorist happened to use does not by itself establish whether the claimed display limitations are met. InterDigital may argue otherwise here, but its contentions appear to be framed in such a way that the specific monitor does *not* matter.

Nor can InterDigital justify adding Disney here on the ground that it needs more Disney-specific discovery to answer the infringement question. InterDigital had 18 months of discovery in the Disney Action, served seven subpoenas on Disney's colorists, and then served its Final Infringement Contentions when that case was only months from trial. (Mot. at 1, 11; ECF 107-1 ¶ 2; Disney Action, ECF 241 at 11-12.) Yet when the Court recently asked InterDigital to identify an infringing monitor scenario, a non-infringing scenario, and explain "what's different about the monitors in those two hypotheticals," InterDigital dodged the question. (*See* Ex. 3 at 16-18.) The problem is not an absence of third-party discovery. InterDigital has not explained what monitor-related fact changes its infringement analysis, even after taking the Disney discovery it now says makes Disney indispensable.

InterDigital's incomplete-verdict concern (at 7-8 n.4, 12) also provides no basis for consolidation because direct infringement will be decided separately in this case. The Court has already said it intends to obtain an answer on direct infringement in this case. (Ex. 3 at 11.) Dolby will propose a special verdict form requiring the jury to decide whether a customer using Dolby Vision as instructed performs the claimed method, separately from knowledge and intent. That ensures the predicate direct-infringement question will be answered regardless of how the jury resolves other

elements of induced infringement. And any infringement theory based on a "specialized implementation" unique to Disney remains for the Disney Action afterward, if necessary. (ECF 99 at 21 n.5.)

**D. The Rule 42(a) factors favor the Court's existing sequence, not consolidation.**

The Court has already chosen the efficient path: first decide the '268 patent invalidity and infringement claims targeting Dolby Vision here, while the Disney Action is stayed. (Disney Action, ECF 241 at 9-11; ECF 44.) InterDigital's Rule 42(a) arguments (at 11-12) would replace that efficiency with a trial covering both Dolby Vision use *and* any unique use by Disney.

The stay already ensures the common issues are decided once, not twice. The Court found that both actions "rely on the '268 patent, the Dolby Vision technology and the similar Dolby technical documents," and that proceeding in both risked "incongruent holdings as to the use of the same technology." (Disney Action, ECF 241 at 11.) The Court resolved that overlap by having this case decide the Dolby Vision questions first. (*Id.* at 8-9.) The Disney Action proceeds afterward only to the extent a Disney-specific "specialized implementation" remains to be decided. (ECF 99 at 21 n.5.)

*Flated* does not support consolidation here. First, no party opposed consolidation there. *Flated*, 2026 WL 220905, at *1. Second, both cases there accused the same product of direct infringement, and neither had been stayed. *Id.* at *1-2. Here, Dolby and Disney oppose consolidation, and the Court has stayed the Disney Action under the customer-suit exception. *Flated* has no bearing.

The balance of convenience favors deciding the question that resolves the most first: whether the Dolby Vision workflow infringes the '268 patent. That answer reaches Disney and every other customer who uses Dolby Vision as instructed, and InterDigital has identified no Disney use that departs from those instructions. (ECF 99 at 21 n.5.) InterDigital does not need Disney here to recover damages either. If

InterDigital prevails, it may recover damages from Dolby based on Dolby's revenue, apportioned to account for the alleged value of the '268 patent and other *Georgia-Pacific* factors, and the Court has already held that *Glenayre* "supports this Court's handling of both cases." (ECF 99 at 20-21.) InterDigital's response that Dolby will not satisfy a judgment entered against a customer misses the point: once InterDigital recovers from Dolby for use of Dolby Vision as instructed, it cannot recover again from a customer for the same infringement. (*Id.*) That is the rule that bars double recovery.

Consolidation would create the very jury confusion Dolby previously identified. InterDigital invokes Dolby's earlier concern about asking a jury to separate Dolby's conduct and use of Dolby Vision from its customers' conduct. (Mot. at 12 (citing ECF 33 at 19).) Adding Disney would compound that problem by asking one jury to decide two distinct infringement questions: whether use of a Dolby Vision workflow as instructed infringes, and whether any Disney-specific conduct outside that workflow independently infringes. The second question matters only if Disney departs from Dolby's instructions in a way that changes the infringement analysis—something InterDigital has never alleged. (*See* ECF 99 at 21 n.5.) Consolidation would therefore potentially add another infringement theory for the jury to distinguish. Consolidation would also create complexities in terms of damages for the distinct companies and issues such as unclean hands that are personal to each company.

InterDigital's assertion (at 11-12) that other customers have not agreed to be bound does not make consolidation more efficient. As explained above, common issues resolved here will have ordinary preclusive effect, while *Kessler* provides additional protection against repeated assertions involving the adjudicated Dolby Vision product. *See SpeedTrack*, 791 F.3d at 1323-25.

InterDigital's concern that discovery from other customers "substantially expand[ed]" the case (at 11) depends on differences in customer use that it has never

identified, despite the expansive discovery it pursued in the Disney Action. InterDigital argues that each customer's acts "undoubtedly vary" and that whether customers follow Dolby's instructions "needs to be discovered for each customer." (*Id.*) But a customer's conduct matters only if it departs from the actually accused Dolby Vision workflow in a way that changes the infringement analysis, and InterDigital identified no such departure by Disney or anyone else. This case decides whether the Dolby Vision workflow, used as accused and instructed, infringes. If InterDigital later believes a customer departs from that workflow in a way that affects infringement, it can pursue that "*specialized implementation* of Dolby Vision" against that customer, just as the Court has provided for any Disney-specific theory in the Disney Action. (ECF 99 at 21 n.5 (emphasis in original).)

## V. CONCLUSION

InterDigital identifies no changed circumstance or other basis to undo the structure the Court has already put in place. The Dolby Action will resolve whether use of Dolby Vision as instructed infringes the '268 patent, while any genuinely customer-specific "specialized implementation" can be addressed afterward if necessary. Consolidation would disrupt that sequence, not make it more efficient. The Court rejected InterDigital's first three attempts to make this case about Disney. The fourth attempt should also be rejected, and the Court should deny InterDigital's motion to sever and consolidate.

Dated: November 9, 2026

FISH & RICHARDSON P.C.

*/s/ Madelyn S. McCormick*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (949) 623-7640
Fax: (858) 678-5099

John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Aleksandr Gelberg (SBN 279989)
gelberg@fr.com
Madelyn S. McCormick (SBN 320063)
mmccormick@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Alex Yu (SBN 334963)
yu@fr.com
Linda Chang (SBN 363647)
chang@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Adam R Shartzer (*Admitted Pro Hac Vice*)
shartzer@fr.com
James H.S. Young (*Admitted Pro Hac Vice*)
jyoung@fr.com
FISH & RICHARDSON P.C
1000 Maine Ave. Ste. 1000
Washington, D.C., 20024
Tel: (202) 783-5070
Fax: (202) 783-2331

Peter (Tae) Hong *(Admitted Pro Hac Vice)*
hong@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Joshua H. Park (*Admitted Pro Hac Vice*)
jpark@fr.com
FISH & RICHARDSON P.C.
909 Fannin St., Ste.2100
Houston, TX 77010
Tel: (713) 654-5300
Fax: (713) 652-0109

Attorneys for Plaintiffs
and Counterclaim Defendants
*Dolby Laboratories, Inc.,*
*Dolby Laboratories Licensing Corp.,*
*and Dolby International AB*

**L.R. 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,178 words, which complies with the word limit of L.R. 11-6.1, and likewise complies with the word limit set by Court Order dated March 26, 2026. *See* Dkt. 21 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (oppositions not to exceed 7,000 words).

Dated: November 9, 2026

*/s/ Madelyn S. McCormick*
Madelyn S. McCormick