Richard A. Kamprath (admitted *pro hac vice)*
rkamprath@bkbclaw.com
**Budwin Kamprath Burgess Campbell PLLC**
3008 Ross Ave., Suite 100, # 17760175
Dallas, Texas 75204
Telephone: (817) 398-5704

Nancy M. Olson (CA SBN 260303)
nolson@olsonstein.com
David M. Stein (CA SBN 198256)
dstein@olsonstein.com
**Olson Stein LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

*Additional Counsel in signature block
*Attorneys for Defendants and Counterclaim Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

DOLBY LABORATORIES, INC., *et al.*,

Plaintiffs,

v.

INTERDIGITAL, INC., *et al.*,

Defendants.

Case No. 2:26-cv-02269-WLH-BFM
Related Case: 2:25-cv-00895-WLH-BFM

**OMNIBUS REPLY BRIEF IN SUPPORT OF MOTION TO SEVER AND CONSOLIDATE [DKT. 107]**

[[redacted]REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

Hearing Date: December 11, 2026
Hearing Time: 1:30 p.m.
Courtroom: 9B
Judge: Hon. Wesley L. Hsu

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Only a Party Performing the Claimed Method Directly Infringes. ........ 2
B. Disney's Colorists Determine How Each Step Is Performed. ........ 3
C. InterDigital Has Always Accused Disney's Direct Infringement. ........ 9
D. Severance and Consolidation Are Efficient Under Rules 21 & 42(a). ........ 9
E. Dolby's Proposal Seeks an Advisory Opinion. ........ 10
F. The Reconsideration Arguments Misread the Motion. ........ 11
III. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) .......... 10

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) .......... 2

*Arris Grp., Inc. v. British Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011) .......... 3

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) .......... 4

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .......... 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .......... 2

*Flated LLC v. I3 Enters., Inc.*,
No. 2:25-cv-04257-WLH-SK, 2026 WL 220905 (C.D. Cal. Jan. 20, 2026) .......... 10

*In re Adams Apple, Inc.*,
829 F.2d 1484 (9th Cir. 1987) .......... 9

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) .......... 2

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 11

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .......... 1, 2

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 10, 11

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014)........................................................................ 3, 11

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
139 F.4th 1340 (Fed. Cir. 2025)........................................................................ 4

*NTP, Inc. v. Rsch. in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005)........................................................................ 2

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*,
303 F. Supp. 2d 1027 (N.D. Cal. 2003) ........................................................... 9

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
363 F.3d 1361 (Fed. Cir. 2004)........................................................................ 11

*Zoltek Corp. v. United States*,
672 F.3d 1309 (Fed. Cir. 2012)........................................................................ 2

**Statutes**

28 U.S.C. § 2201(a)........................................................................ 10, 11

**Rules**

Fed. R. Civ. P. 54(b) ........................................................................ 11

**Other Authorities**

L.R. 7-18 ........................................................................ 12

## I. INTRODUCTION

The oppositions do not grapple with InterDigital's arguments favoring consolidation but instead rest on a premise the Patent Act does not allow: that this case is somehow capable of resolving whether Dolby software—"Dolby Vision, in and of itself"—infringes the asserted method claims of the '268 Patent. Dkt. 119-1 ("Dolby-Opp.") at 3, 8, 13–14; Disney Action, Dkt. 250 ("Disney-Opp.") at 4, 7–8, 10–11, 13–14, 18.[1] Only someone who performs each step directly infringes a method claim; software does not. A software supplier's "sales of its software alone cannot infringe the patent. [I]nfringement occurs only when someone performs the method using a computer running the necessary software." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).

The oppositions presume that direct infringement, which the Court confirmed will be decided in this case, depends on using Dolby Vision out-of-the-box per Dolby's instructions, so the user is irrelevant. But this is legally and factually wrong.

InterDigital's final infringement contentions in the Disney Action accuse Disney not based on out-of-the-box use of Dolby Vision software, but rather on Disney's particular implementation of the claimed method, which rests on three things Dolby Vision does not supply or instruct: (1) Disney's hardware, including its selection of reference and non-reference displays which Dolby neither knows nor dictates; (2) third-party software tools other than Dolby Vision that Disney's colorists use to perform the claimed color correction; and (3) Disney-specific requirements, protocols, and colorist choices that do not come from Dolby's instructions. Direct infringement—and the only allegations InterDigital has ever brought—can be determined *only* by examining those Disney specifics; Disney can make one choice and use Dolby Vision to implement its choice and infringe, but it can make a different

[1] This Omnibus Reply is being filed concurrently in the Dolby and Disney Actions.

choice, use Dolby Vision to implement that choice, and may not infringe. The software is just a tool to implement a user's choices (using hardware the user selected); the user's choices and conduct determine infringement.

Because InterDigital has not accused Disney of using Dolby Vision out-of-the-box per Dolby's instructions, attempting to decide what would happen if someone did so would answer a hypothetical and illusory question. This would render an improper advisory opinion and be beyond the proper scope of the Court's declaratory judgment jurisdiction.

Disney is the only accused direct infringer, and only Disney has competent evidence of its Disney-specific use. Because the Rule 42 factors favor consolidation, the Court should consolidate to resolve infringement once, with finality, and without an advisory opinion.

## II. ARGUMENT

### A. Only a Party Performing the Claimed Method Directly Infringes.

"A method claim is directly infringed only by one practicing the patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). The *en banc* Federal Circuit has confirmed that "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). *Lucent* applies that rule to software suppliers like Dolby: where asserted claims are method claims, the software supplier "can only be liable for infringement" as "a contributor and/or an inducer." 580 F.3d at 1317; *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221–22 (Fed. Cir. 2014); *NTP, Inc. v. Rsch. in Motion, Ltd.*, 418 F.3d 1282, 1317–21 (Fed. Cir. 2005) (sale of product capable of performing method not direct infringement of method), *limiting in part on other grounds by Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc in relevant part).

Dolby Vision software "in and of itself" cannot, as a matter of law, directly infringe the asserted method claims of the '268 Patent. A person performs a method. Software does not. Dolby's declaratory-judgment posture does not change the analysis. A supplier may seek a declaration that it does not induce or contribute to its customers' infringement, but that declaration still turns on whether an identified customer directly infringes. *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375–76 (Fed. Cir. 2011); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904–05 (Fed. Cir. 2014). Here, the only direct-infringement question is whether Disney's colorists performed every step using Disney selected hardware.[2]

**B. Disney's Colorists Determine How Each Step Is Performed.**

As Dolby admits, only Disney knows how its colorists perform the steps of the asserted method claims. Dolby incorrectly treats InterDigital's Final Infringement Contentions ("FICs") in the Disney Action as a Dolby Vision chart with some Disney citations added. (Dolby-Opp. at 2, 4.) The FICs show the opposite: for every step, InterDigital charts infringement based on a specific choice by Disney or its colorists. *See, e.g.*, Kamprath Decl., Ex. E (FIC excerpts). Change Disney's choice, and the infringement outcome may change even if the software does not. Dolby's repeated assertion that InterDigital has not accused Disney-specific conduct is wrong. The FICs disclose how Disney-specific conduct meets each limitation of the asserted claims, in three categories Dolby Vision does not supply or instruct: (1) Disney's hardware, (2) third-party software, and (3) Disney's own choices.

*Disney's hardware.* Claim 1 recites "using at least one of a non-reference type display having a non-reference color gamut and a reference type display having a

[2] Dolby's assertion that InterDigital "dodged" the Court's question about Disney's implementation (Dolby-Opp. at 16 (citing Ex. 3 at 16-18)) is inaccurate. Dolby's exhibit omits the sealed portion of the hearing and slides—the very transcript and slides in which InterDigital provided the details Dolby says were missing. *See* Oct. 13, 2026 Hr'g Tr. 18:9–20; Dkt. 121; *see also* Kamprath Decl., Ex. F (hearing slides).

reference color gamut." ('268 Patent, claim 1.) A display is hardware; Dolby Vision is software, which cannot meet this limitation by itself. *See Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 139 F.4th 1340, 1349-50 (Fed. Cir. 2025) (software development kit "not capable of satisfying certain computer hardware-related limitations in the asserted claims"); *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286–87 (Fed. Cir. 2011). Disney requires its colorists to use a Disney-approved monitor—[redacted] (FICs at 13–15; *see* Dkt. 109-2 (Dolby Rog. 2 Response at 18.) Disney's interrogatory responses identify the displays actually used for its titles, and those "[d]isplays can be reference type displays by outputting in Rec.709" or "non-reference type displays by outputting in a non-Rec.709 gamut"—a configuration Disney sets. (FICs at 13.)

*Third-party software.* Disney also uses software tools other than Dolby Vision to perform the claimed mastering and color-correction steps of claims 1[a], 1[b], 6[a], and 6[b]. Disney grades using [redacted]. (FICs at 6.) Those non-Dolby tools are compatible with Dolby Vision but are not part of it. (Dkt. 109-2 at 11–12; *see* FICs at 60-71, 91-102.) Using non-Dolby tools necessarily is beyond Dolby Vision "out of the box." Disney's implementation of the claimed method thus goes beyond following Dolby Vision's default functionality.

Dolby's discovery responses confirm these choices are central to the dispute. Dolby says InterDigital "has not shown that the monitors it identifies are the only monitors Disney used, nor has it identified the monitor actually used for any accused title," and that Dolby's documents do not "describe the displays selected by Disney (e.g., as a target display) during the alleged color correction related to Dolby Vision titles." (Dkt. 109-2 at 18, 21, 28, 42.) Dolby's latest filing confirms it: Dolby says it is

addressing InterDigital's "failure of proof as to Disney," and, tellingly, seeks more time to address "the significance of the colorist's choices." (Dkt. 124 at 7, 11.) Dolby is right on at least this much: those facts (and Disney's colorists' choices) matter—which is exactly why this question should be resolved with Disney as a party.

*Four examples from the FICs show that Disney's choices determine infringement.* The FICs identify Disney as the actor: "Disney's colorists perform color correction through color grading and metadata generation," and "Disney's colorists perform infringing color correction and mastering methods." (FICs at 2–4; Disney Action, Dkt. 185-2 at 2, 5.) Disney "defines grading as the process of color correction" and defines mastering for its own productions. (Disney Action, Dkt. 185-2 at 5.) The FICs chart Disney's Best Practices Guides (not Dolby documents) and confirm that [redacted] (FICs at 4.)

*Example 1: deriving the SDR master.* Claim 6[c] requires mastering the content "for display on the reference type displays having a reference color gamut, using a color gamut mapping applied to the mastered color corrected picture content for display on the non-reference type displays," and the FICs chart that step to Disney's derived SDR masters. (FICs at 158–59.) Disney decides, title by title, whether to [redacted] (FICs at 159–60.) When Disney chooses the [redacted], it applies [redacted]—exactly what claim 6[c] recites—and Disney's interrogatory responses identify the titles for which it did so. (FICs at 158–59 (citing Defs.' Seventh Suppl. Resps. to Pls.' Second Set of Interrogs., Apps. A, B, E).) Disney's own guide directs that, in those workflows, [redacted]

[redacted] and confirms that Disney, not Dolby, makes the call: "Disney Mastering allows productions the option to use Dolby Vision as appropriate to their finishing workflow." (Dkt. 107-2 at 5 (DIS448-0000005; DIS2269-0000053).)

*Example 2: the Rec.709 trim.* Claim 1[c] requires "generating metadata for a color gamut mapping that color transforms the mastered color corrected picture content for display on reference type displays having a reference color gamut," and the FICs chart that step to the [redacted] (FICs at 84, 109–10.) Dolby's guidance makes [redacted] [redacted] [redacted]—but Disney mandates them: [redacted] (FICs at 109–10.) Because [redacted] is the reference color gamut under the FICs, [redacted] to reference type displays, and Disney's colorists set its [redacted] for each title. (FICs at 8, 84.) Disney supplies [redacted] InterDigital accuses and [redacted] in a Disney-specific way.

*Example 3: the mastering gamut and display configuration.* Claims 1[a] and 1[b] require color correcting "using at least one of a non-reference type display having a non-reference color gamut and a reference type display having a reference color gamut," and mastering "for display on the non-reference type displays having a non-reference color gamut," which the FICs chart to Disney's required mastering display settings. (FICs at 8–9, 48–49.) Disney requires Mastering Display settings of [redacted] (FICs at 8, 48–49; Dkt. 107-3 at 7.) Disney requires that its mastering display primaries [redacted]

[redacted]—so the configuration Disney prescribes is what determines whether a non-reference display is used or not. (FICs at 8, 12.) Dolby does not choose: its guidance tells colorists to [redacted] and notes that [redacted] while a user who configures the same display to output [redacted] is using a reference type display, not the non-reference configuration [redacted] (FICs at 9, 13, 82–83.) Because claim 1 requires use of a non-reference type display, Disney's implementation of its required configuration infringes.

*Example 4: the title-specific record.* Disney's [redacted] record, title by title, the choices its colorists made, and the FICs chart one as an example: DIS448-0604192, [redacted]. (FICs at 64–65, 96–98.) For that title, Disney's colorists mastered on a display configured as [redacted]. (FICs at 8, 64–65, 96–98.) That record is evidence of what a Disney colorist actually did: master for a non-reference color gamut (claims 1[a]–[b]) and generate gamut-mapping metadata for reference color gamuts (claim 1[c]). It also confirms these are Disney's choices, not Dolby defaults: a different Disney title, DIS448-0598348 [redacted], records a different mastering display configuration [redacted]. (FICs at 44, 98.)

In each example, infringement turns on Disney's colorist's actions according to Disney's rules and records title by title—not on what Dolby Vision does "out-of-the-box" based on Dolby's instructions.

Disney invokes the Court's observation that whether infringement occurs only with "certain types of monitor" could be answered "without worrying about the actual

implementation of the method by Disney." (Disney-Opp. at 14 (quoting Conf. Tr. at 16:1-17).) That is incorrect—determining infringement requires one to know whether a monitor was a "reference" or "non-reference" type display. (Disney Action, Dkt. 170 at 16-18.) And, deciding which categories of displays satisfy the claims as construed does not decide whether Disney's colorists actually used such a display, so configured, on any accused title when performing color correction. That requires Disney's title-by-title records (Example 4)—the proof Dolby faults InterDigital for lacking: "the monitor actually used for any accused title." (Dkt. 109-2 at 18.)

*Not Just "Pushing a button": Dolby and Disney now concede the process involves far more.* To obtain a stay, Disney told the Court its role in the accused process was ministerial: "we have a vendor, or maybe a Disney person who pushes the button on the Dolby Vision says do it." (Disney Action, Dkt. 211 (June 5, 2026 Hr'g Tr.) at 10:25–11:2.) The Court's stay ruling reflected that picture of Disney as a mere user of Dolby Vision "off the shelf," "as instructed by the manufacturer." (Disney Action, Dkt. 241 at 7; *see* Disney-Opp. at 7.)

But Dolby's and Disney's subsequent (and materially changed) positions confirm that picture was both incomplete and inaccurate. Dolby now admits the accused workflow depends on third-party grading systems into which [redacted] (Dkt. 109-2 at 11; Dkt. 107 at 9–10.) Disney responds that this concerns third-party developers, not Disney (Disney-Opp. at 12 & n.1). But that is the point: the accused method runs through non-Dolby tools Disney selects, not Dolby Vision alone. Dolby's opposition concedes that "[i]f InterDigital's theory turns on the particular displays Disney's colorists used, then it must prove the Disney-specific facts on which that theory depends." (Dolby-Opp. at 9.) Exactly. The Disney-specific facts are central to the direct infringement analysis. No professional colorist "pushes a button" to have those choices made for them.

Disney likewise acknowledges "Disney's selection of a compliant monitor," arguing only that the point is not new (Disney-Opp. at 13), and that the Court contemplated that "some Disney-specific issues might remain." (*Id.* at 2, 10.) A process in which the customer selects the monitors, configures their gamuts, chooses the grading suites and third-party software, and varies title by title is not a "button push."

**C. InterDigital Has Always Accused Disney's Direct Infringement.**

Dolby calls this InterDigital's "fourth attempt to make this case about Disney." (Dolby-Opp. at 1; *see also* Disney-Opp. at 1–2, 6–9.) It is about Disney. InterDigital sued Disney, not Dolby. At every stage, InterDigital has focused on Disney's direct infringement. *See, e.g.,* Dkt. 27 (InterDigital's Motion to Dismiss) at 8, 21; Dkt. 44 (Order) at 9; Dkt. 34 at 5-6; Dkt. 53 (InterDigital's Answer) ¶¶ 73, 85–97.

**D. Severance and Consolidation Are Efficient Under Rules 21 & 42(a).**

Neither Dolby nor Disney disputes that Rule 42(a)'s threshold—a common question of law or fact—is met. (Dolby-Opp. at 6; Disney-Opp. at 17.) Both actions involve the same patent, the same method claims, the same claim constructions, the same accused color-correction workflow, and nearly identical prior art. (Dkt. 107 at 11.) The only question is whether consolidation saves resources. Consolidation is "within the broad discretion of the district court," which "weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028–29 (N.D. Cal. 2003) (quoting *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987)). It unequivocally does.

*The direct infringer and its evidence.* Disney holds the evidence of its colorists' choices, which determines direct infringement. Third-party subpoenas (Dolby-Opp. at 15; Disney-Opp. at 8, 18) do not fairly replicate Disney being a party—subject to party discovery, and testifying before the jury. (Dkt. 107 at 12.)

*Avoiding a second trial.* Dolby and Disney would prefer to leave any Disney "specialized implementation" for the Disney Action. (Dolby-Opp. at 2, 12, 17; Disney-Opp. at 2, 8, 10, 19.) But Disney's conduct is the only accused direct infringement. Trying only a hypothetical-user question guarantees at least a second trial on the same patent and evidence. Indeed, Dolby now concedes that the preclusive scope of its proposed verdict "would be raised and addressed by the courts in those subsequent suits." (Dkt. 124 at 8.) Infringement should be "decided once, not twice." (Dolby-Opp. at 17.) That neither case in *Flated LLC v. I3 Enters., Inc.*, No. 2:25-cv-04257-WLH-SK, 2026 WL 220905, at *2 (C.D. Cal. Jan. 20, 2026), was stayed or opposed (Dolby-Opp. at 17) does not change this.

*Avoiding an incomplete verdict.* A jury could find for Dolby on knowledge or intent and never decide whether Disney directly infringed. (Dkt. 107 at 8 & n.4.) Dolby's proposed generic-customer verdict question (Dolby-Opp. at 16) does not cure that problem and could frustrate the Court's stated intent to resolve direct infringement here.

*No prejudice.* Neither Disney nor Dolby identifies any undue prejudice of having Disney as a party to its own conduct. One jury deciding Disney's direct infringement and Dolby's derivative liability together is clearer than two juries deciding hypothetical and actual versions of the same question.

**E. Dolby's Proposal Seeks an Advisory Opinion.**

Dolby seeks adjudication of something that is not before the Court: whether a use of Dolby Vision as Dolby instructs meets each limitation of the asserted claims. A declaratory-judgment court may resolve only a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests," and that "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)); *see* 28 U.S.C.

§ 2201(a). A supplier's declaratory-judgment jurisdiction extends only to the conduct actually implicated by the patentee's allegations. *Microsoft*, 755 F.3d at 904–05, 911.

The only direct infringement controversy is whether Disney's colorists performed the claimed steps through the Disney-specific choices charted in the FICs. (FICs at 4, 6, 8, 13–16, 23, 56–57, 63–64, 88–89, 158–59; Dkt. 53 ¶¶ 73, 85–97.) Dolby would substitute whether "a [hypothetical] customer using Dolby Vision as instructed performs the claimed method." (Dolby-Opp. at 16.) That customer is no one: it made no choices, used no monitors, selected no gamuts, and color corrected no titles. A finding about such a customer would be "an opinion advising what the law would be upon a hypothetical state of facts," *MedImmune*, 549 U.S. at 127, untethered to any actual controversy. *See Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1378–79 (Fed. Cir. 2004). Nor would it bind anyone: only Disney has agreed to be bound; Dolby disclaims responsibility for its customers' damages (Dkt. 107 at 7 (quoting Dkt. 66-3)); Dolby argues that any Disney-specific "specialized implementation" would remain a live issue for the follow-on Disney Action (Dolby-Opp. at 17); and Dolby leaves the inefficiencies of determining the "precise scope of preclusion" to future courts in future litigation (Dkt. 124 at 8). The question is not whether Disney modifies Dolby Vision software; it is whether Disney's specific choices infringe. A ruling on generic Dolby Vision use by a hypothetical user not the subject of any actual allegations would not resolve that question.

### F. The Reconsideration Arguments Misread the Motion.

The oppositions call the motion a disguised request for reconsideration. (Dolby-Opp. at 6–7; Disney-Opp. at 1, 6–9.) It is not. It is a request under Rules 21 and 42(a) and the Court's inherent authority to manage its docket efficiently. (Dkt. 107 at 5, 13.) *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); Fed. R. Civ. P. 54(b) (interlocutory orders "may be revised at any time"); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885–87 (9th Cir. 2001).

But even Local Rule 7-18 would be satisfied: "the emergence of new material facts" has occurred since the stay. L.R. 7-18(b). The Court said it will adjudicate direct infringement (Dkt. 105 at 11), and Disney is the only accused actor. Dolby's discovery responses admit it does not know or dictate Disney's display, gamut, or workflow choices (Dkt. 107 at 6, 8–10), undercutting the stay's premise that Dolby, as "true defendant," could fully litigate infringement (Disney Action, Dkt. 241 at 6–8). Dolby now says it "will litigate its own damages (if any) and not the damages of its customers, including Disney" (Dkt. 107 at 7 (quoting Dkt. 66-3)), and that additional trials would be needed for any "specialized implementation" (Dolby-Opp. at 15, 17). Dolby, which opposed dismissal by promising to "prepare for trial as soon as possible" (Dkt. 33 at 2–3), now seeks a February 2028 trial (Dkt. 124-1 at 1).

That InterDigital raised severance at the stay hearing (Disney-Opp. at 9-10) does not change anything: that was before the Court said it would decide direct infringement here and before Dolby's discovery responses. Nor does the "major issues" standard help Disney. (*Id.* at 5, 10–11.) Direct infringement is not a residual issue; it is the predicate that must be decided, and deferring Disney's actual conduct guarantees a second trial. Invalidity (*id.* at 16) is unaffected; it will be decided once either way. And Disney's agreement to be bound (*id.* at 11, 18–19) becomes meaningless if it is bound only to a hypothetical use; not its actual use.

## III. CONCLUSION

InterDigital respectfully asks the Court to grant this motion to ensure efficiency and finality.

Dated: November 24, 2026

Respectfully submitted,

*/s/ Nancy M. Olson*
Nancy M. Olson (CA SBN 260303)
nolson@olsonstein.com
David M. Stein (CA SBN 198256)
dstein@olsonstein.com
**Olson Stein LLP**
240 Nice Lane, #301
Newport Beach, CA 92663
Telephone: (310) 916-7433

Richard A. Kamprath (admitted *pro hac vice*)
rkamprath@bkbclaw.com
Joshua W. Budwin (admitted *pro hac vice*)
jbudwin@bkbclaw.com
Kevin Burgess (admitted *pro hac vice*)
kburgess@bkbclaw.com
**Budwin Kamprath Burgess Campbell PLLC**
3008 Ross Ave., Suite 100, # 17760175
Dallas, Texas 75204
Telephone (Dallas): (817) 398-5704
Telephone (Austin): (737) 214-6402

*Attorneys for Defendants and Counterclaim Plaintiffs*

**L.R. 11–6.2 Certification**

The undersigned, counsel of record for Defendants and Counterclaim Plaintiffs, certifies that this brief contains 3,977 words, which complies with the word limit of L.R. 11-6.1 and with the word limit set by the Court's Standing Order. *See* Dkt. 21 (WLH Standing Order for Newly Assigned Civil Cases) § G.4 (reply brief not to exceed 4,000 words).

Dated: November 24, 2026

*/s/ Nancy M. Olson*
Nancy M. Olson